# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1653

_____

Craig Eugene Smith,                    *
                                       *
    Petitioner - Appellant,        *
                                       *  Appeal from the United States
    v.                             *  District Court for the
                                       *  Southern District of Iowa.
Rusty Rogerson, Warden, Iowa State     *
Medical and Classification Center,     *
                                       *
    Respondent - Appellee.         *

_____

Submitted: February 12, 1999
Filed: March 12, 1999

_____

Before MURPHY, LAY, and JOHN R. GIBSON, Circuit Judges.

_____

MURPHY, Circuit Judge.


After Craig Eugene Smith killed Craig Allen in an area frequented by homeless people, a shelter worker put him in touch with John Wellman, an experienced criminal defense attorney. Wellman met with Smith and advised him to make a statement to the police. At trial some of Smith's statements to the police were admitted against him. He was convicted of first degree murder and sentenced to life. Smith then raised ineffective assistance of counsel claims in a post-trial motion and on his direct appeal in state court. He was unsuccessful there and later brought this

petition for habeas relief. The district court[1] dismissed the petition, and Smith appeals. We affirm.

On September 30, 1993, Smith, Allen, and three other men were drinking and smoking marijuana under the University Avenue bridge in Des Moines. Smith says that after the others had fallen asleep or passed out, Allen made a homosexual advance towards him and started pushing him. Smith fought back. There was evidence that he picked up a piece of pipe and beat Allen with it, crushing his skull. Allen had also been stabbed in the jaw and strangled. After the killing Smith threw the pipe in the river and dragged the body into the woods, where he covered it with a blanket. Allen's body was discovered on or about October 2, 1993.

Smith had meanwhile made inculpatory statements to several people, including Janet Johnson, a volunteer shelter worker. She arranged for Smith to talk on the phone with an attorney on the evening of October 2. The lawyer she contacted was John Wellman, an experienced criminal trial attorney and the director of the Polk County Public Defender Office. The following morning Smith went to Wellman's office and described what had happened on September 30. He told the attorney that he had fought Allen and beat him with a pipe after Allen had made sexual advances. Wellman explained to Smith the difference between first degree murder and manslaughter and gave his opinion that the best Smith could hope for was a manslaughter conviction. He indicated that the use of the pipe could be seen as proof of a willful, deliberate, and premeditated killing rather than the result of a sudden, violent, and irresistible passion. He told Smith that he did not have to talk to the police, but recommended that he give himself up and make a statement describing how Allen had provoked him by the homosexual advance which caused his violent reaction in defending himself.

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

Smith did not want to turn himself in but Johnson told him that she would go to the police if he did not, and Smith agreed to make a statement. Wellman contacted the police, who already had a material witness warrant for Smith, their prime suspect. Prior to the interview Wellman advised Smith to keep his statement simple, to focus on what started the physical encounter, and to make it clear that his actions were in response to Allen's attempt to engage in sex. After receiving his Miranda rights, Smith confessed he had killed Allen in fighting off the unwelcome sexual advances. Wellman asked the initial questions at the interview, but the police later asked Smith what he had used to hit Allen. Smith replied that he had only used his hands. No mention was made of the pipe, and Wellman did not intervene to bring out anything about it. The pipe itself was never discovered by the police.

Smith went to trial and his confession from the interview was played to the jury. The prosecutor used his statements against him by pointing out the inconsistency between the extent of Allen's injuries and Smith's claim that he had only used his hands to kill Allen. The jury found Smith guilty of first degree murder.

Prior to sentencing Smith moved for a new trial. His new lawyer argued that trial counsel had provided ineffective assistance in several respects, including the failure to investigate adequately before advising Smith to make an inculpatory statement to the police. An evidentiary hearing was held at which John Wellman testified. He indicated that he had represented close to 200 people charged with Class A felonies and that he had appeared in over 500 felony jury trials. He said that he had believed Smith's story because he had not minimized his role in the killing and his memory of the events was clear. During their initial meeting Wellman recognized that Smith's intelligence was limited and learned that he had served time in prison. He learned that Smith had made inculpatory statements to several people and that Johnson was going to report what Smith had told her to the police. Counsel also testified that he knew that Smith would be connected to the murder by his admissions. He planned to raise provocation as a defense, but felt Smith should not take the stand

-3-

because he would not make an effective witness. In his view the best way to make a record of provocation was for Smith to make a statement to the police that could later be introduced into evidence. Counsel also hoped that a prompt confession might lead to a satisfactory agreement with the state to avoid trial. He testified that he did not tell Smith to lie to the police but that he had not expected him to tell them about the pipe. When Smith gave the answer about using only his hands to kill Allen, counsel did not intervene because he did not think it would help Smith to bring out the facts about the pipe. Counsel thought that the interview had served its main purpose of making a record of the provocation. The motion for a new trial was denied.

Smith again raised ineffectiveness of counsel on his appeal. The Iowa Court of Appeals affirmed Smith's conviction, State v. Smith, 543 N.W.2d 618 (Iowa. Ct. App. 1995), and further review was denied by the Iowa Supreme Court (January 26, 1996). Smith indicates he did not file an application for state post-conviction relief because he had already raised his ineffective assistance claim in his motion for new trial and his direct appeal.

Smith then filed this petition for a writ of habeas corpus under 28 U.S.C. § 2254. He claimed that he received ineffective assistance because his trial counsel failed to conduct an adequate investigation prior to advising him to give an inculpatory statement to the police. The petition was referred to a magistrate judge[2] who recommended that it be dismissed. Smith filed objections to the magistrate's report and recommendation. One objection was that the magistrate had not addressed a claim that trial counsel had known Smith would lie in his statement to the police. The district court adopted the magistrate's report and recommendation and also

[2]The Honorable Ross A. Walters, United States Magistrate Judge for the Southern District of Iowa.

concluded that Smith could not obtain relief on the claim that counsel had known he would lie to the police. It dismissed the petition.

The district court granted Smith's request for a certificate of appealability, although it did not specify the issue or issues on which it was granted. Smith renews his claim that he received ineffective assistance of counsel because of counsel's inadequate investigation prior to recommending he make a statement to the police. Smith also now claims that counsel's assistance was ineffective because he encouraged him to give the police an incomplete statement, which was used against him at trial.

The right to effective assistance of counsel "is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). To succeed with the claim, Smith must establish both that his lawyer's performance was deficient and that "but for" it "there is a reasonable probability that . . . the result . . . would have been different." Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).

The state argues at the outset that Smith's constitutional right to counsel had not arisen at the time he had his first interview with Wellman because he had been neither arrested nor charged. Smith counters that he had received his Miranda warnings before actually making his statement to the police so that at the time he met them his right had attached. We need not consider exactly when his constitutional right came into play or exactly which part of counsel's performance was relevant at the time because analysis of the merits of Smith's arguments shows he has not met the Strickland test.

Smith claims that counsel was ineffective because he did not adequately investigate before recommending he make an inculpatory statement. Smith argues that the duty to investigate cannot be abrogated, that his lawyer failed in this duty,

and that the failure prejudiced him. The state contends that under the circumstances the decision to advise Smith to make a statement without further investigation was reasonable, and in any event it did not prejudice him. Under Smith's view, if counsel had conducted additional investigations he might have chosen not to recommend that he make an inculpatory statement. He suggests counsel could have learned more about his impairment and how the murder occurred and what the autopsy showed.[3] Whether or not to recommend making a statement is a strategic decision which is only deficient if it is unreasonable "from counsel's perspective at the time" he made the recommendation. Id. at 689.

At the time counsel made his recommendation, he knew that there was a material witness warrant out for Smith, that Smith was the prime suspect for the killing, and that Smith had made incriminating admissions to several people, including to at least one person who intended to reveal that information to the police. In these circumstances it was not unreasonable for counsel to believe that Smith's best strategy would be to try to use a provocation defense to reduce the charge to manslaughter. Since counsel knew Smith had previously served time in prison and was probably of less than average intelligence, it was reasonable for him to believe that the best way to get the provocation facts into evidence would be by having Smith make a statement to the police instead of testifying at trial.[4] He also hoped an early admission would help Smith's credibility and assist in plea bargaining. It was not

---

[3]At oral argument Smith's counsel suggested that the cause of death could have been strangulation rather than the blows to the head. He suggests this could have strengthened the provocation defense and minimized the negative impact of the pipe evidence. This theory was not presented to the district court.

[4]Smith had also told Johnson of the homosexual advances and she might have been called at trial. Wellman testified, however, that he believed it was important that the information come from Smith in order to be effective in showing his cooperation. We cannot say that that belief was unreasonable.

unreasonable from counsel's perspective to decide without further investigation that Smith was better off making a statement than not making a statement.

Since it was not unreasonable at the time for counsel to recommend making a statement, his performance was not deficient. Furthermore, Smith has not shown he was actually prejudiced by his statement because there was so much other damaging evidence against him. Since he has failed to meet either of the Strickland prongs, his claim of ineffective assistance of counsel on the basis of inadequate investigation fails on the merits.

Smith also puts forward a claim that counsel provided ineffective assistance by encouraging him to make an incomplete statement. Smith argues that counsel had a duty to inform him of the consequences of giving an incomplete statement, that he failed in that duty, and that Smith was prejudiced by that failure when the incomplete nature of his statement was used against him at trial. The state argues that this issue has not been exhausted because it was never presented to the state courts and that it is without merit. This claim was not fairly presented to the state courts since Smith did not directly make the argument he now asserts. See Picard v. Connor, 404 U.S. 270, 275 (1971) (claim must be "fairly presented" to state courts to satisfy exhaustion requirement). Since it was not exhausted, the claim is not properly before us, but we conclude that in any event it fails to satisfy either Strickland prong.[5]

We conclude that the district court did not err in dismissing Smith's habeas petition, and we affirm.

_____

[5]It was not unreasonable for counsel to recommend to Smith that he not bring up the pipe in his statement. A complete statement regarding the pipe would have directly conflicted with the provocation defense while the incomplete statement only indirectly damaged the defense by casting some doubt on Smith's credibility.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.