937 So.2d 578 (2006)
Lenard James PHILMORE, Appellant,
v.
STATE of Florida, Appellee.
Lenard James Philmore, Petitioner,
v.
James R. McDonough, etc., Respondent.
Nos. SC04-1036, SC05-250.
Supreme Court of Florida.
June 15, 2006.
*580 John W. Jennings, Capital Collateral Regional Counsel, James V. Viggiano, Jr. and Richard E. Kiley, Assistant CCR Counsel Middle Region, Tampa, FL, for Appellant/Petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, FL and Leslie T. Campbell, Assistant Attorney General, West Palm Beach, FL, for Appellee/Respondent.
PER CURIAM.
In 2002, this Court affirmed Lenard James Philmore's sentence of death. See Philmore v. State, 820 So.2d 919 (Fla. 2002). Philmore now appeals an order of the circuit court denying a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851 and petitions the Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained in this opinion, we affirm the trial court's order and deny the petition for a writ of habeas corpus.

FACTS AND PROCEDURAL HISTORY
Philmore was convicted of first-degree murder, conspiracy to commit robbery with a deadly weapon, carjacking with a deadly weapon, kidnapping, robbery with a deadly weapon, and third-degree grand theft based upon the events surrounding the 1997 abduction and murder of Kazue Perron. The facts of this case are fully set forth in this Court's opinion on direct appeal. See Philmore, 820 So.2d at 923-25. Briefly stated, on November 14, 1997, Philmore and codefendant Anthony Spann devised a plan to rob a bank to obtain money to travel to New York. See id. at 923. Spann told Philmore that to facilitate this robbery they would need to steal a getaway vehicle and kill the driver of the vehicle they stole. See id.
They ultimately spotted Perron driving a gold Lexus in a residential community, and the two followed her.
At approximately 1 p.m., Perron entered the driveway of a friend with whom she intended to run errands. *581 Upon entering the driveway, Spann told Philmore to "get her." Philmore approached the driver's side of the vehicle and asked Perron if he could use her phone. Perron stated that she did not live there, and Philmore took out his gun and told Perron to "scoot over." Philmore drove Perron's car, with Spann following in his Subaru. . . .
....
Philmore and Spann passed a side road in an isolated area in western Martin County, and Spann flashed his lights, indicating that they turn around and head down the road. Philmore chose the place to stop. Philmore ordered Perron out of the vehicle and ordered her to walk towards high vegetation containing maiden cane, which is a tall brush.... Philmore then shot her once in the head. Philmore picked up Perron's body and disposed of it in the maiden cane. Spann did not assist in disposing of the body.
Id. at 924.
Philmore and Spann drove the two vehicles to Indiantown, where Philmore entered the bank and took approximately $1100 that a teller was counting. After robbing the bank, Philmore and Spann returned to the Lexus, which they had parked a short distance from the bank, and concealed the Subaru. See id. After a high-speed chase on Interstate 95, the two were apprehended hiding in an orange grove. See id. at 925.
From November 15 through November 26, Philmore gave several statements to the police in which he ultimately confessed that he robbed the bank and abducted and shot Perron. On November 21, Philmore led the police to Perron's body, which was found in the maiden cane. Philmore was charged in a six-count indictment, and the jury found Philmore guilty on all counts.
Id. (footnote omitted).
During the penalty phase, several witnesses who were the victims of previous crimes committed by Philmore testified for the State. Perron's husband, Jean Claude Perron, and Perron's friend, Chandra Bill, also testified, describing their relationships with Perron and discussing Perron's positive impact on the lives of others.
In mitigation, Philmore's family members testified that he was both the victim and witness of physical and mental abuse by his father, that he witnessed the murder of his niece when he was thirteen years old and subsequently started drinking, and that he suffered a number of injuries to his head. These witnesses also testified about Philmore's relationship with codefendant Spann. In an attempt to establish statutory mitigation factors, Philmore also presented the expert testimony of Dr. Frank Wood and Dr. Robert Berland. In rebuttal, the State presented the testimony of Dr. Gregory Landrum and Dr. Helen Mayberg.
The jury recommended the death penalty by a vote of twelve to zero. See Philmore, 820 So.2d at 925. After weighing the aggravating and mitigating circumstances, the trial court followed the jury's recommendation and sentenced Philmore to death.[1]
*582 Philmore raised eleven issues on direct appeal.[2] The Court denied without prejudice Philmore's claim that he received ineffective assistance of counsel related to his preindictment statements to law enforcement officers regarding Perron's abduction and murder. See id. at 928-29. The Court rejected all of Philmore's other arguments as either unpreserved or meritless and affirmed Philmore's convictions and sentence of death. See id. at 940.
Philmore filed a timely motion for postconviction relief under rule 3.851, in which he raised multiple claims. The circuit court held an evidentiary hearing at which Philmore presented testimony on his claims that trial counsel was ineffective during jury selection, during the penalty phase, and in conceding Philmore's guilt and that preindictment counsel provided ineffective assistance by allowing Philmore to give multiple statements to police.
Thomas Garland, Philmore's lead trial counsel, who conducted voir dire and was primarily responsible for the penalty phase, testified regarding his recollection of his actions during trial preparation and trial.[3] Dr. Michael Maher, an expert in forensic psychiatry, examined Philmore before trial and participated in a pretrial deposition, but was never called to testify at trial. Dr. Maher testified at the hearing that had he been called at trial he would have testified that Philmore suffers from organic brain injury and that at the time of the murder Philmore was operating under extreme mental or emotional disturbance, and that his capacity to appreciate the criminality of his conduct was substantially impaired. John Hetherington, the assistant public defender who represented Philmore prior to his indictment on the kidnapping and murder charges, testified regarding his recollection of the events that led to Philmore's confession that he shot Perron. Lastly, Philmore's mother testified about her conversations with Hetherington during his representation of Philmore.
The trial court issued a comprehensive order denying relief, and Philmore appeals, raising four issues for this Court's *583 review.[4] Philmore also petitions for a writ of habeas corpus, raising six claims for relief.[5]

ANALYSIS

A. MOTION FOR POSTCONVICTION RELIEF
On appeal, Philmore asserts that the trial court erred in denying several of his claims of ineffective assistance of counsel. Because the trial court denied these claims after holding an evidentiary hearing, the Court defers to the trial court's factual findings to the extent that they are supported by competent, substantial evidence, but reviews de novo the application of the law to those facts. See Stephens v. State, 748 So.2d 1028, 1031-32 (Fla.1999).
To obtain relief on a claim of ineffective assistance of counsel Philmore must establish
deficient performance and prejudice, as set forth in Strickland v. Washington, 466 U.S. 668[, 104 S.Ct. 2052, 80 L.Ed.2d 674] (1984). See Rutherford v. State, 727 So.2d 216, 218 (Fla.1998). As to the first prong, deficient performance, a defendant must establish conduct on the part of counsel that is outside the broad range of competent performance under prevailing professional standards. See Strickland, 466 U.S. at 688[, 104 S.Ct. 2052]. Second, as to the prejudice prong, the deficient performance must be shown to have so affected the fairness and reliability of the proceedings that confidence in the outcome is undermined. See id. at 694[, 104 S.Ct. 2052]; Rutherford, 727 So.2d at 220.
Gore v. State, 846 So.2d 461, 467 (Fla.2003) (parallel citations omitted). "[W]hen a defendant fails to make a showing as to one prong, it is not necessary to delve into whether he has made a showing as to the other prong." Waterhouse v. State, 792 So.2d 1176, 1182 (Fla.2001). Further, as the United States Supreme Court explained in Strickland,
[j]udicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the *584 evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . .
466 U.S. at 689, 104 S.Ct. 2052. We address each of Philmore's issues on appeal below.

1. Ineffective Assistance of Preindictment Counsel
In his motion, Philmore asserted that preindictment representation by attorney John Hetherington was ineffective assistance of counsel for several reasons: (1) Hetherington failed to investigate Philmore's case before advising Philmore to give incriminating statements to police; (2) Hetherington allowed Philmore to give incriminating statements to police after Hetherington knew Philmore would implicate himself in Perron's murder; (3) Hetherington was not present when Philmore gave statements to police; and (4) Hetherington failed to secure a plea agreement prior to allowing Philmore to give statements to police. The trial court addressed this claim in a comprehensive order that included ten pages of detailed findings. We commend the trial court for conducting a thorough, well-reasoned analysis of this claim and conclude that the trial court's determination that Hetherington's actions were informed, strategic choices is supported by competent, substantial evidence.[6]
At the hearing, Hetherington testified at length regarding his decisions during his representation of Philmore. Although Hetherington could not recall exactly when in the sequence of Philmore's confessions he learned of specific pieces of information, Hetherington consistently testified that his advice to Philmore to cooperate was based on Philmore's statements, first that Philmore was not involved in the abduction and then that Philmore was not the shooter. Hetherington also testified that while he views information given by defendants with some skepticism, he believed Philmore because Hetherington had information that Spann was wanted for other murders. After it became apparent that Philmore had lied about his lack of involvement in the abduction, Hetherington admonished Philmore about telling Hetherington the truth. Hetherington believed that Philmore understood the importance of being honest and would no longer be untruthful.
Hetherington also advised Philmore not to speak with law enforcement officers or submit to polygraph examinations if Philmore was not being candid about his role in Perron's murder. Philmore nonetheless chose to make statements to law enforcement officers. Philmore presented no evidence to rebut Hetherington's testimony that Philmore wanted to speak to law enforcement officers even after counsel advised him of the risk.
Moreover, Philmore's first statement to police after Hetherington began representing him was consistent with what Philmore had told Hetheringtonthat he was not involved in Perron's abduction or murder. It was Philmore's spontaneous statement prior to the first polygraph examination that exposed his deceit. The trial court found that even if Hetherington had been *585 present at this time, Hetherington could not have stopped Philmore from admitting that he was present during the abduction.[7] Hetherington testified that after Philmore's first confession about his involvement in the abduction, Hetherington had to reevaluate his strategy. Hetherington stated that he believed that if Philmore was not the shooter, Philmore's best chance to avoid the death penalty was to present Philmore as a cooperating nonshooter who played a minor role in the felony murder. Once Philmore admitted he was the shooter, Hetherington believed that Philmore had nothing to lose by making additional statements to law enforcement officers.
In sum, the evidence presented at the hearing supports the trial court's finding that "Mr. Hetherington's actions ... were informed, strategic choices, based on the information that Mr. Hetherington had at the time, which were substantially influenced by the Defendant's own statements and wishes, which seemed reasonable in consideration of all the facts and circumstances known to Mr. Hetherington at the time each statement was made." Accordingly, Philmore has failed to establish that Hetherington provided ineffective assistance of counsel. See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) ("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.").

2. Ineffective Assistance of Trial Counsel During Jury Selection
Philmore next asserts that the trial court erred in denying his claim that trial counsel was ineffective for failing to challenge the State's use of a peremptory strike to remove juror Holt, an African-American female. Specifically, Philmore argues that trial counsel failed to adequately challenge the State's proffered reason for the strike as pretextual.
In making this argument, Philmore appears to be seeking review of the validity of the strike. This substantive issue was raised and addressed on direct appeal and is therefore procedurally barred. See Kimbrough v. State, 886 So.2d 965, 983 (Fla.2004) (concluding that to the extent the defendant seeks review of the substantive issue underlying his ineffective assistance of counsel claim, the claim is procedurally barred because it could have been raised on direct appeal).
To the extent Philmore contends that trial counsel was ineffective, we conclude that Philmore cannot establish prejudice. On direct appeal, Philmore argued that "the trial court erred in granting the State's peremptory challenge regarding prospective juror Tajuana Holt, because the State's reason for excusing her was pretextual and she was in fact stricken because of her race." Philmore, 820 So.2d at 929. We first concluded that the claim had been waived because "although Philmore objected at the time the State sought to exercise a peremptory strike of Holt, he failed to renew his objection prior to the jury being sworn." Id. at 930. However, we also addressed the merits of Philmore's claim and determined that "it has no merit because the State has advanced a facially race-neutral non-pretextual reason for peremptorily challenging Holt." Id. Therefore, any alleged deficiency in counsel's performance in challenging the State's strike of juror Holt did not "so affect[ ] the *586 fairness and reliability of the proceedings that confidence in the outcome is undermined." Gore, 846 So.2d at 467. The trial court correctly denied this claim for relief.

3. Ineffective Assistance of Trial Counsel During the Penalty Phase
In his next issue on appeal, Philmore asserts that the trial court erred in rejecting his claim that trial counsel was ineffective for failing to present Dr. Maher to explain the presence of organic brain damage in support of the statutory mitigator that Philmore suffered from extreme mental or emotional disturbance. This Court has recognized that "the obligation to investigate and prepare for the penalty portion of a capital case cannot be overstated." State v. Lewis, 838 So.2d 1102, 1113 (Fla.2002). "[A]n attorney has a strict duty to conduct a reasonable investigation of a defendant's background for possible mitigating evidence." Ragsdale v. State, 798 So.2d 713, 716 (Fla.2001) (alteration in original) (quoting State v. Riechmann, 777 So.2d 342, 350 (Fla.2000)); see also Wiggins v. Smith, 539 U.S. 510, 522-23, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) ("[The] principal concern in deciding whether [counsel] exercised `reasonable professional judgmen[t]' is not whether counsel should have presented a mitigation case. Rather, [the] focus [is] on whether the investigation supporting counsel's decision not to introduce mitigating evidence. . . was itself reasonable."). However, when evaluating claims that counsel was ineffective for failing to present mitigating evidence, the defendant has the burden of showing that counsel's ineffectiveness "deprived the defendant of a reliable penalty phase proceeding." Rutherford v. State, 727 So.2d 216, 223 (Fla.1998).
In denying this claim, the trial court ruled that Philmore "failed to overcome the presumption that his attorney's actions under the circumstances were sound strategy" and "failed to demonstrate that he was prejudiced." In reaching this conclusion, the trial court found that Dr. Maher's opinions were inconsistent with the trial testimony of defense experts Dr. Wood and Dr. Berland. Specifically, the trial court found that Dr. Maher's opinion that Philmore's organic brain injury was in the frontal lobe was inconsistent with Dr. Wood's testimony at trial that the area of the abnormality was to the back left side of Philmore's brain. The trial court also found that Dr. Maher's testimony that he did not believe that Philmore was under the substantial domination of another would have undermined Dr. Berland's testimony that Philmore was under the substantial domination of codefendant Spann.
Philmore asserts that because Dr. Berland's conclusions had already been impeached by the State, the prospect of conflicting expert testimony by Drs. Berland and Maher on the substantial domination mitigator did not justify the decision not to call Dr. Maher. Even if Dr. Maher would have been more successful at establishing statutory mitigation than Dr. Berland, the standard for assessing ineffective assistance claims "is not how present counsel would have proceeded, in hindsight, but rather whether" the defendant has established both deficient performance and prejudice under Strickland. Brown v. State, 846 So.2d 1114, 1121 (Fla.2003) (quoting Cherry v. State, 659 So.2d 1069, 1073 (Fla.1995)). Moreover, Philmore's presentation of a conflicting expert opinion would have further undermined the defense's credibility. Trial counsel "cannot be deemed ineffective for not presenting. . . conflicting opinions." Jones v. State, 855 So.2d 611, 618 (Fla.2003).
Philmore also asserts that the trial court's finding that Garland made a tactical decision not to call Dr. Maher is not *587 supported by the record. Garland testified that he decided not to call Dr. Maher at trial after reviewing Dr. Maher's report and deposition and speaking to Dr. Maher several times. Although Garland did not explain with specificity his reasons for not utilizing Dr. Maher, Garland clearly considered this alternative and rejected it. We conclude that the trial court did not err in finding that Philmore failed to establish that Garland's decision not to call Dr. Maher to testify was deficient performance.
Even if Garland's decision not to call Dr. Maher to testify could be considered deficient performance, this failure did not "deprive[] the defendant of a reliable penalty phase proceeding." Rutherford, 727 So.2d at 223. Garland presented two experts and several lay witnesses to establish mitigation. Our confidence in the outcome of the penalty phase is not undermined by the absence of Dr. Maher's testimony even though the State had some success impeaching Dr. Berland's testimony. Further, given the impeachment of Dr. Berland and Dr. Wood, it is likely that the State would also have had some success in contradicting Dr. Maher's conclusions. Accordingly, we affirm the trial court's denial of this claim for relief.

4. Ineffective Assistance of Counsel in Conceding Philmore's Guilt
In Philmore's final issue on appeal, he asserts that the trial court erred in denying his claim that trial counsel was ineffective during the guilt phase for conceding Philmore's guilt of the conspiracy to commit robbery, carjacking, kidnapping, and robbery charges, and to the lesser included offense of second-degree murder. The trial court found that the concessions were a reasonable trial tactic and that Philmore consented to this strategy.
The only evidence presented at the evidentiary hearing on this issue was the testimony of Garland. He stated that because Philmore had already confessed to the murder and been sentenced to life imprisonment in another case, the strategy was to save Philmore's life. Although Garland could not remember the details of the discussions he and Chip Bauer had with Philmore about this strategy, Garland recalled Philmore being aware of and consenting to this strategy. Accordingly, there is competent, substantial evidence to support the trial court's finding that Philmore consented.
Contrary to Philmore's assertion, this case is not like Nixon v. State, 857 So.2d 172 (Fla.2003), rev'd, Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004), on remand 932 So.2d 1009 (Fla. 2006). In Nixon, this Court concluded that no competent, substantial evidence existed to support the trial court's finding that Nixon consented to trial counsel's strategy of conceding guilt because trial counsel testified that Nixon did nothing when trial counsel discussed this strategy with him. See 857 So.2d at 176. In this case, Garland testified that Philmore expressly consented to the strategy to concede his guilt. Moreover, this Court's requirement in Nixon that a defendant must affirmatively and explicitly agree to a strategy to concede guilt was overruled by Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 563, 160 L.Ed.2d 565 (2004), in which the United States Supreme Court held:
When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blanket rule demanding the defendant's explicit consent. Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the Strickland standard, that is the end of the matter; *588 no tenable claim of ineffective assistance would remain.
Accordingly, Philmore's reliance on this Court's 2003 decision in Nixon to support his claim of ineffective assistance is without merit. We affirm the trial court's denial of relief on this claim.

B. PETITION FOR WRIT OF HABEAS CORPUS

1. Trial Court's Failure to Consider Expert Testimony
In Philmore's first claim for habeas relief, he argues that the trial court erred in failing to consider Dr. Wood's testimony in support of the mitigating factor that Philmore suffered from an extreme mental or emotional disturbance at the time of the offense. A trial court's rejection of mitigating circumstances is an issue that is properly raised on direct appeal. Cf. White v. State, 729 So.2d 909, 911 n. 4 (Fla.1999) (concluding that the postconviction court properly rejected as procedurally barred the claim that the trial court applied an improper standard in rejecting mental health mitigation). In fact, Philmore argued on direct appeal that the trial court erred in rejecting the statutory mitigator that Philmore suffered from an extreme mental or emotional disturbance at the time of the murder. This Court concluded that the trial court's rejection of this mitigating circumstance was supported by competent, substantial evidence. See Philmore, 820 So.2d at 937. Philmore's claim that the trial court erred in failing to consider Dr. Wood's testimony in support of this mitigation is procedurally barred. Cf. Griffin v. State, 866 So.2d 1, 18 (Fla.2003) (concluding that the defendant's claim that the trial court's sentencing order failed to consider and weigh unrefuted mitigating evidence presented at trial was procedurally barred because it could have been raised on direct appeal); Cherry v. Moore, 829 So.2d 873, 876 (Fla. 2002) (concluding that defendant's claim that the trial court did not consider a psychiatric report in evaluating mitigation was procedurally barred because it was raised on direct appeal).
To the extent that Philmore attempts to raise this issue as an ineffective assistance of appellate counsel claim, we deny relief. Philmore's assertion that appellate counsel was ineffective for not arguing that the trial court erred in failing to consider Dr. Wood's testimony in relation to this mitigation is merely an additional argument in support of the claim previously raised on direct appeal. We addressed in detail Philmore's claim that the trial court erred in rejecting the statutory mitigator that Philmore suffered from an extreme mental or emotional disturbance at the time of the murder, and noted the "trial court's thorough consideration" of the issue. Philmore, 820 So.2d at 937. Accordingly, we conclude that Philmore's ineffective assistance of appellate counsel claim is without merit.

2. Constitutionality of Florida's Death Penalty Statute
Philmore next argues that Florida's death penalty statute is unconstitutional as applied to him under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). However, Philmore states that he is raising this issue only to preserve it for possible federal review. Further, this Court has held that Ring does not apply retroactively. See Johnson v. State, 904 So.2d 400, 412 (Fla.2005).
To the extent that Philmore attempts to raise this issue as an ineffective assistance of appellate counsel claim, we deny relief. "If a legal issue `would in all *589 probability have been found to be without merit' had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel's performance ineffective." Rutherford, 774 So.2d at 643 (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). First, at the time the Court issued its decision in Philmore's direct appeal, Ring had not been decided. Second, this Court has rejected claims under Ring in direct appeals where the trial judge has found the aggravating factor of a previous conviction of a violent felony based on either prior or contemporaneous felony convictions. See, e.g., Duest v. State, 855 So.2d 33, 49 (Fla.2003); Caballero v. State, 851 So.2d 655, 663-64 (Fla.2003). In this case, one of the aggravating circumstances found by the trial court was that Philmore was previously convicted of another capital felony or of a felony involving the use or threat of violence. In addition, the jury unanimously recommended the death sentence. Cf. Anderson v. State, 863 So.2d 169, 189 (Fla.2003) (rejecting a Ring claim on direct appeal where the jury recommended the death sentence by a unanimous vote and one of the aggravating circumstances found by the trial judge was that the defendant had been convicted of a prior violent felony for the contemporaneous conviction of attempted murder). Accordingly, Philmore's claim is without merit. Appellate counsel was not ineffective for failing to raise this issue on direct appeal.

3. Ineffective Assistance of Trial Counsel
Philmore next argues that trial counsel was ineffective for failing to object to the following comments by the prosecutor: (1) references to "how lucky" an unknown woman was when Philmore and Spann were unable to attack her; (2) references to the personal opinions of the investigators; (3) the stereotyping of Philmore as wearing a "white tank top" and "gold necklaces" and referring to Philmore's gun as "the great equalizer"; (4) attempted personalization of the prosecution as a joint effort between law enforcement and the community; (5) assertion that the prosecution was being presented by "their state attorney"; (6) remarks about Philmore's brain damage being in "the murder center of the brain . . . or kidnapping center of the brain"; (7) references to the polygraph examinations; and (8) statements that the only expert testimony that the jury should accept regarding the brain imaging were the witnesses participating "on behalf of the people of the State of Florida" with "no interest other than an interest in making sure that the science . . . is properly represented to the public." This claim of ineffective assistance of trial counsel is not appropriately raised in a petition for writ of habeas corpus. See Reed v. State, 875 So.2d 415, 439-40 (Fla.2004) ("To the extent that Reed claims his trial counsel rendered ineffective assistance of counsel, this issue is improperly raised in a petition for writ of habeas corpus."). Accordingly, we decline to address this issue.
To the extent that Philmore asserts that appellate counsel was ineffective for failing to sufficiently argue this issue on direct appeal, we deny relief. Appellate counsel raised this precise issue on direct appeal, pointing to all the prosecutorial comments Philmore now contends were improper. We concluded that even when considered cumulatively, neither the alleged guilt phase errors nor the alleged penalty phase errors rose to the level of fundamental error. See Philmore, 820 So.2d at 932.

4. Jury Instructions
Philmore's fourth claim for habeas relief is that the jury was unconstitutionally *590 instructed that its role was advisory. This claim should have been presented on direct appeal and is therefore procedurally barred. See Dufour v. State, 905 So.2d 42, 67 (Fla.2005) ("[A] claim of error regarding the instructions given by the trial court should have been presented on direct appeal and is not cognizable through collateral attack."). Further, as we reiterated in Dufour, this claim is meritless. See id. ("This Court has repeatedly determined that challenges to `the standard jury instructions that refer to the jury as advisory and that refer to the jury's verdict as a recommendation violate Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)' are without merit.") (quoting Card v. State, 803 So.2d 613, 628 (Fla.2001)); see also Globe v. State, 877 So.2d 663, 673 (Fla.2004) (rejecting the defendant's argument on direct appeal that "the trial court erred by instructing the jury that it was giving an `advisory sentence,' in violation of" Caldwell and Ring). We thus deny this claim for relief.

5. Cumulative Effect of Trial Errors
Philmore argues that the cumulative effect of the trial errors deprived him of a fundamentally fair trial. Because we have concluded that Philmore's other claims are without merit or are procedurally barred, we further conclude that Philmore was not deprived of a fundamentally fair trial. See Melendez v. State, 718 So.2d 746, 749 (Fla.1998) (concluding that where claims were either meritless or procedurally barred there was no cumulative effect to consider).

6. Competency at the Time of Execution
In his final habeas claim, Philmore asserts that his Eighth Amendment rights will be violated because he may be incompetent at the time of execution. Philmore acknowledges that a claim of incompetency to be executed cannot be asserted until a death warrant has been issued because the claim is not ripe, and that a defendant must submit this claim in accordance with section 922.07, Florida Statutes (2005). Philmore raises this claim solely to preserve the issue for federal review. We therefore deny this claim for relief. See Griffin, 866 So.2d at 22-23 ("While Griffin is under a death sentence, no death warrant has been signed and his execution is not imminent. Thus, the issue of Griffin's sanity for execution is not ripe . . . .").

CONCLUSION
For the reasons discussed above, we affirm the trial court's denial of Philmore's motion for postconviction relief and deny Philmore's petition for a writ of habeas corpus.
It is so ordered.
PARIENTE, C.J., and WELLS, ANSTEAD, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
NOTES
[1] The trial court found five aggravating circumstances: (1) Philmore was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person; (2) the capital felony was committed while Philmore was engaged in the commission of a kidnapping; (3) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest; (4) the capital felony was committed for pecuniary gain; and (5) the capital felony was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. See id. The trial court found no statutory mitigation but found the following nonstatutory mitigation: (1) Philmore was both the victim and witness of physical and verbal abuse by an alcoholic father; (2) Philmore has a history of extensive drug and alcohol abuse; (3) Philmore suffered severe emotional trauma and subsequent posttraumatic stress; (4) Philmore was molested or raped, or both, at a young age; (5) Philmore was classified as severely emotionally handicapped; (6) Philmore has exhibited the ability to form close loving relationships; (7) Philmore cooperated with the State; and (8) Philmore has expressed remorse for causing the death of Perron. See id. at 925-26.
[2] These issues were: (1) the trial court erred in failing to suppress Philmore's statements to law enforcement officers; (2) the trial court erred in allowing the State to exercise a peremptory challenge against prospective juror Tajuana Holt; (3) the trial court erred in denying Philmore's motion to exclude a photograph depicting Perron; (4) the State made improper arguments throughout the guilt phase; (5) the State made improper arguments throughout the penalty phase; (6) the trial court erred in compelling a mental health examination of Philmore by the State's expert witness, and Florida Rule of Criminal Procedure 3.202 is unconstitutional; (7) the trial court erred in finding the "cold, calculated, and premeditated" aggravator; (8) the trial court erred in finding the "avoid arrest" aggravator; (9) the trial court erred in rejecting the "under the influence of extreme mental or emotional disturbance" statutory mitigator; (10) the trial court erred in rejecting the "substantial domination of another" statutory mitigator; and (11) the trial court erred in rejecting the "impairment of capacity to appreciate the criminality of conduct" statutory mitigator. See id. at 926 n. 11.
[3] Chip Bauer, who was appointed as second chair and was primarily responsible for the guilt phase, did not testify at the hearing.
[4] These issues are: (1) whether the trial court erred in denying Philmore's claim that trial counsel was ineffective for failing to challenge the State's use of a peremptory strike to remove juror Holt; (2) whether the trial court erred in denying Philmore's claim that he received ineffective assistance of counsel prior to his arrest for the murder of Perron; (3) whether the trial court erred in denying Philmore's claim that trial counsel was ineffective during the penalty phase for failing to present evidence that Philmore suffered from organic brain damage; and (4) whether the trial court erred in denying Philmore's claim that trial counsel was ineffective during the guilt phase for conceding Philmore's guilt.
[5] These claims are: (1) Philmore's death sentence is invalid because the trial court ignored expert testimony that, if considered, would have established statutory mitigation; (2) Philmore's death sentence is unconstitutional under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); (3) trial counsel was ineffective for failing to object to prosecutorial misconduct and appellate counsel was ineffective to the extent that appellate counsel failed to litigate the cumulative effect of this misconduct; (4) the instructions to the jury unconstitutionally diluted the jury's role in sentencing; (5) cumulative procedural and substantive errors deprived Philmore of a fair trial; and (6) Philmore's Eighth Amendment right against cruel and unusual punishment will be violated because he may be incompetent at the time of execution.
[6] Because we conclude that Philmore has failed to establish that he received ineffective assistance of counsel during police questioning, we decline to address the State's argument that Philmore's Sixth Amendment right to counsel for the murder had not attached at this time. Cf. Smith v. Rogerson, 171 F.3d 569, 572 (8th Cir.1999) (declining to consider exactly when the defendant's Sixth Amendment right to counsel "came into play" because the merits of the defendant's arguments showed that he had not met the Strickland test).
[7] Philmore told police that he was involved in abducting Perron but that he had no knowledge about what happened to her.