# IN THE COURT OF APPEALS OF IOWA

No. 20-0329
Filed August 4, 2021

**CRAIG EUGENE SMITH,**
        Defendant-Appellant,

**vs.**

**STATE OF IOWA,**
        Plaintiff-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Jeffrey D. Farrell, Judge.

Craig Eugene Smith appeals the dismissal of his application for post-conviction relief. **AFFIRMED.**

Jessica Maffitt of Benzoni Law Office, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

We address an application for postconviction relief (PCR) filed almost twenty-six years after a jury convicted Craig Smith of murder in the first degree.[1] Following the jury trial, the district court sentenced Smith to life in prison. But prior to sentencing, in a motion for new trial, Smith alleged, among other claims,[2] that his trial counsel was ineffective "for failing to perform a thorough investigation before allowing Smith to make an inculpatory statement to the police." *State v. Smith*, 543 N.W.2d 618, 619 (Iowa Ct. App. 1995) (*Smith I*). After an evidentiary hearing where trial counsel testified, the district court denied the motion for new trial finding trial counsel did not breach an essential duty and that trial counsel exercised a reasonable strategic choice by proceeding with Smith's inculpatory

---

[1] The jury returned the guilty verdict on January 18, 1994, and the PCR court dismissed Smith's application for PCR on January 6, 2020.

[2] In the motion for new trial, Smith listed several instances of alleged ineffective assistance of counsel:

> a. Defendant was heavily medicated prior to and during his trial and was unable to adequately assist his counsel and participate in his defense;
>
> b. Counsel for Defendant did not properly investigate his case in order to be adequately prepared for trial;
>
> c. Trial counsel for the Defendant did not file the necessary motions to adequately protect the interests of the Defendant nor did he file sufficient motions to protect the Defendant from illegally seized evidence;
>
> d. Trial counsel failed to properly interview Defendant in order to adequately prepare for trial;
>
> e. Trial counsel failed to adequately investigate the incident of the victim's death prior to having Defendant give a full and complete statement to police officers; and
>
> f. Trial counsel failed to properly object to matters of evidence prior to trial and during trial in order to adequately protect Defendant's rights.

But during the hearing before the trial court, Smith focused exclusively on item (e); he did not present any other claim to the trial court.

statement. *Id.* at 620. Smith appealed his conviction, raising ineffective assistance of counsel. In *Smith I,* we summarized the facts:

> On September 30, 1993, Smith was living in a tent under the University Avenue bridge in Des Moines where he was drinking with Craig Allen and several others. According to Smith, Allen made an unwelcome sexual advance toward him, leading to a fight during which Smith struck Allen several times with his fist and a metal pipe. Allen died of the wounds sustained from Smith's beating. Smith disposed of Allen's body in a nearby woods, covering it with a blanket. The body was discovered on October 2, 1993.
>
> That evening [trial counsel] was contacted on Smith's behalf, and [trial counsel] immediately contacted Smith by telephone. [Trial counsel] also spoke to Janice Johnson who informed [trial counsel] that Smith told her he killed Allen. Smith told [trial counsel] he killed Allen by striking him with his fists and a metal pipe following Allen's sexual advances.
>
> [Trial counsel] met with Smith the next day and informed him of the potential criminal charges he faced, including first-degree murder and manslaughter. [Trial counsel] and Smith discussed telling the police Smith struck Allen because he was provoked by Allen's sexual advances. Smith agreed to make a statement to the police, and two Des Moines police officers came to [trial counsel]'s office to take the statement. Smith was read his *Miranda* rights and proceeded to give his statement, confessing he had killed Allen by hitting him repeatedly with his hands following Allen's unwelcome sexual advances. Smith did not tell the police he also struck Allen with a metal pipe. [Trial counsel] was present during the interview and controlled most of the questioning.

*Id.* at 619.

In the direct appeal, Smith alleged his trial counsel encouraged him to avoid telling the police he struck the victim with a pipe. But after hearing from trial counsel, the court found no ineffective assistance of counsel and noted trial counsel "had no reason to believe Smith would exclude [the assault with the pipe] from his statement." *Id.* at 620 (finding no showing of prejudice because a jury could have "inferred malice, premeditation, and specific intent to kill from the

evidence indicating Smith was struck by a blunt object" so Smith could not establish the result would have been different).[3]

Next, Smith filed a writ of habeas corpus again claiming ineffective assistance of counsel "because his trial counsel failed to conduct an adequate investigation prior to advising him to give an inculpatory statement to the police" and his trial counsel encouraged him to give the police an incomplete statement— leaving out the use of a pipe to beat the victim. *Smith v. Rogerson*, 171 F.3d 569, 572 (8th Cir. 1999) (*Smith II*) (noting counsel's decisions were not unreasonable and there was no prejudice because there was so much other damaging evidence against Smith). Yet, before meeting with his trial counsel, Smith made inculpatory statements to several people, including a volunteer shelter worker, and that also factored into the strategy used by trial counsel. *Id.* at 571. The federal court dismissed the habeas petition. *Id.* at 573. In the federal case, Smith noted "he did not file an application for state PCR because he had already raised his ineffective assistance claim in his motion for new trial and in his direct appeal." *Id.* at 572.

Years passed after denial of the petition for federal habeas corpus relief. Then in September 2019, Smith applied for PCR. In his pro se filing, Smith alleged seventeen grounds of ineffective assistance of trial counsel and appellate counsel and a claim of actual innocence. The State filed a motion to dismiss. At the PCR hearing, Smith testified and again raised his complaint that trial counsel's behavior led to the rejection of a favorable plea. Additionally, Smith contended there was a

---

[3] The trial court assigned Smith a new lawyer who investigated Smith's claims and represented him at the hearing on the motion for new trial. Smith's trial counsel weighed in on the allegations as well. *Id.* at 619.

ground of fact not known within the three-year time period for filing a PCR petition, but he did not identify that fact. In January 2020, the district court dismissed the PCR on the basis that the statute of limitations had run and there were no exceptions shown to the three-year limitations period. In a motion to reconsider, Smith then raised the issue that he was incompetent to assist in his defense because of his intellectual challenges.

Smith appeals the summary ruling dismissing his PCR application. The State argues Smith employs a "shotgun approach" and throws out claims of competency to stand trial, ineffectiveness of counsel—both trial and PCR, and that his sentence was illegal because he is innocent of first-degree murder.[4] We address the viability of these claims in light of the passage of time.

**Standards for Review.**

Whether a motion to dismiss or for summary disposition, our review of such a ruling is for correction of legal error. *Thongvanh v. State*, 938 N.W.2d 2, 8 (Iowa 2020) (dismissal); *Linn v. State*, 929 N.W.2d 717, 729 (Iowa 2019) (summary disposition). To the extent claims of ineffective assistance of counsel are in play, our review is de novo. *Linn*, 929 N.W.2d at 729. Summary disposition is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law," essentially applying summary judgment principles. *Davis v. State*, 520 N.W.2d

---

[4] Smith's claims of ineffective assistance of PCR counsel and illegal sentence are raised for the first time here.

319, 321 (Iowa Ct. App. 1994) (quoting Iowa Rule of Civil Procedure 237(c), now renumbered 1.981(3)). Likewise, a de novo review is applied to claims involving ineffective assistance of counsel on PCR cases. *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011).

Claims of actual innocence are reviewed de novo. *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). "[W]e may review a challenge that a sentence is illegal at any time." *Jefferson v. Iowa Dist. Ct.*, 926 N.W.2d 519, 522 (Iowa 2019) (quoting *State v. Zarate*, 908 N.W.2d 831, 840 (Iowa 2018)). We typically review challenges to illegal sentences for correction of legal errors, but our standard of review for an allegation of an unconstitutional sentence is de novo. *Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 643 (Iowa 2019). "An illegal sentence is void" and, for this reason, is "'not subject to the usual concepts of waiver, whether from a failure to seek review or other omissions of error preservation.'" *State v. Woody*, 613 N.W.2d 215, 217 (Iowa 2000) (quoting *State v. Ohnmacht*, 342 N.W.2d 838, 842, 843 (Iowa 1983)).

**Timeliness of PCR Filing.**

To establish an ineffective-assistance-of-counsel claim, Smith must demonstrate "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *State v. Straw,* 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). The claimant must prove both elements by a preponderance of the evidence. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). But, after two decades, Smith's PCR action is barred unless an exception applies to the statute of limitations. Iowa Code section 822.3 (2019) directs the time for filing PCR claims. That section provides:

> All other applications must be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued. However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period.

Iowa Code § 822.3 (2019); *see also Penticoff v. State*, No. 19-0975, 2020 WL 5229186, at *2 (Iowa Ct. App. Sept. 2, 2020) (citing cases that recognize an implied limitation period that runs from the appearance of a new ground of fact or law). Procedendo from the direct appeal issued on February 26, 1996. Thus, the time to file a PCR petition ran in February 1999. Finding no exception applied, the district court dismissed all of Smith's ineffective-assistance claims against trial counsel and appellate counsel. Additionally, Smith's actual innocence claim was dismissed.

To resist the summary disposition of the PCR, the moving party bears the burden of showing the absence of a genuine issue of material facts. *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 73 (Iowa 2011). We view the record in the light most favorable to the nonmoving party. *Eggiman v. Self–Insured Servs. Co.*, 718 N.W.2d 754, 758 (Iowa 2006). We draw all legitimate inferences from the record in favor of the nonmoving party. *Vossoughi v. Polaschek*, 859 N.W.2d 643, 649 (Iowa 2015).

The record made at the PCR hearing centered on Smith's argument that his trial counsel's actions caused the State to withdraw a favorable plea agreement to manslaughter.[5] During the direct examination of Smith, the following took place:

---

[5] PCR counsel referenced *Gamble v. State*, and told the PCR court he was "precluded from commenting on the merits of the application and resistance to the

Q. So, Mr. Smith, let me try to make sure we all understand your allegations here. So are you asserting that at some point before your conviction the State had made a plea offer to you to plead to manslaughter instead of murder? A. Yeah.

Q.: And was that communicated to you, that plea offer? A. Yes.

Q. And did you accept that plea offer? A. Yes.

Q. And are you claiming that the State backed away from the plea offer because they said you made some type of misrepresentation? A. Yeah. My—my lawyer sometime during—after I made my—they gave me—asked me a bunch of questions, they—sometime afterward, a week or two afterwards, my lawyer went behind the scenes and told him a totally different story, and then that's when they took it away. And then during my trial, I wrote a letter to the judge stating that I didn't lie on my plea bargain. And then after my trial was over, they had a hearing on it, and my second lawyer put my first lawyer on the stand and my lawyers—first lawyer admitted that he lied, and then he found out I actually told the truth, but he said it was too late by then.

Q. Okay. So I want to make sure we all understand what you're saying. So you lost the opportunity of a plea offer because you assert your trial counsel made a misrepresentation to the State of Iowa? A. Yeah.

Q. And if you could go back, or if you had—if you had known about it, you would try to enforce that plea agreement as a contract? A. Yeah.

Q. So all of those facts that we just talked about, though, did you—did you know about all of those facts at the time of your sentencing? A. I didn't know about the law.

. . . .

Q. . . . But, Mr. Smith, I do want to go back and make sure I've got an answer to the question I asked, which is: Are you aware of any newly discovered evidence or change in the law that would apply to you that would entitle you to bring this claim for ineffective assistance of counsel related to the confession? A. Well, I didn't know about the law based on the plea bargain.

No other evidence was presented at the hearing. These details discussed at the

PCR hearing were known within the three years to file a PCR application. The

---

motion to dismiss unless [he had] a good faith basis to do so." 723 N.W.2d 443, 446 (Iowa 2006).

PCR court dismissed the application. Ironically, Smith then filed a pro se motion to reconsider the PCR ruling raising his "lack of intelligence, being that he did not possess a sixth grade level of education," which he claimed made him incompetent to stand trial or assist with his defense. The PCR court denied the motion.

Smith does not contest the passage of time between the issuance of procedendo and the filing of this PCR claim. On appeal, he does not raise the argument about the missed plea opportunity he described during the PCR hearing. Instead, Smith narrows his new-ground-of-fact argument to his trial counsel's failure to request an evaluation of Smith's competency to stand trial and his PCR counsel's failure to raise the issue at the PCR hearing. Smith argues, like the situation in *Harrington v. State,* he is not required to show that the newly asserted ground of fact or law would likely have changed the result of the case. *See* 659 N.W.2d 509, 520-21 (Iowa 2003) (finding undisclosed police reports and recantation evidence, not discovered within the time for filing a PCR, qualify as material evidence that probably would have changed the trial outcome and support a due process violation). Smith contends that although not raised below at the PCR court, because of his mental functioning, he was "in no position to preserve error, request a section 812.3 hearing or avoid a waiver of his motion in arrest of judgment." Thus, Smith claims he was denied his due process right to a fair trial and the case should be remanded to develop the PCR record on this issue because there is a fact question not resolvable on summary disposition.

The critical questions about a defendant's competency are whether the defendant had the ability to "(1) appreciate the charge, (2) understand the proceedings, and (3) assist effectively in the defense." *State v. Edwards*, 507

N.W.2d 393, 395 (Iowa 1993). And, "[w]e presume a defendant is competent to stand trial." *State v. Lyman*, 776 N.W.2d 865, 874 (Iowa 2010), *overruled on other grounds* by *Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016). In his pro se PCR application, Smith addressed his trial counsel's failure to require a competency examination "to verify his diminished capacity."

Prior to this appeal, two seasoned defense counsel were involved in Smith's various proceedings—trial counsel and counsel hired to address the direct appeal and file the habeas corpus writ. Smith made references in the earlier proceedings noting his limited intellectual functioning. In earlier filings on direct appeal, Smith argued that he was "heavily medicated prior to and during his trial and was unable to adequately assist his counsel and participate in his defense." Smith touched on his competency in his habeas corpus case. *Smith II,* 171 F.3d at 572-73 (noting Smith was of "less than average intelligence"). In that proceeding, Smith argued his trial counsel failed to properly investigate his case, including failing to "learn more about his impairment." *Id.* at 572. Yet, the federal court found Smith failed to satisfy either *Strickland* prong. *Id.* at 573. Referencing Smith's limitations, the *Smith II* court noted "since counsel knew Smith had previously served time in prison and was probably of less than average intelligence, it was reasonable for him to believe that the best way to get the provocation facts into evidence would be by having Smith make a statement to the police instead of testifying at trial." *Id.*

Although there are references to Smith's educational level of function, Smith did not pursue those avenues in his first appeal or through the habeas corpus proceedings. Finally, at no stage was the record developed to show psychiatric, behavioral, or intellectual evidence supporting the need or requirement for a

competency examination.  *See State v. Einfeldt*, 914 N.W.2d 773, 783 n.3 (Iowa 2018) ("[E]ven the presence of mental illness at trial, in and of itself, is not necessarily sufficient to trigger the requirement of a competency hearing . . . .  The present mental illness must be sufficient to give rise to a serious question as to whether the defendant meaningfully understands the charges and is capable of meaningfully assisting in the defense." (citations omitted)).  Smith's seasoned trial counsel testified that he explained the case strategy and that Smith believed it to be reasonable, showing Smith participated in his defense.  Likewise, the detailed version of the murder given by Smith were consistent with the version he gave to others.  Thus, he understood what he had done.

Given the earlier factual references to Smith's functioning, we find his alleged ground of fact or law could have been raised within the applicable time required for a PCR application.  Smith was alerted to the basic premise of his current competency claim within the three-year time for filing a PCR application.  "A reasonable interpretation of the statute compels the conclusion that exceptions to the time bar would be, for example, newly-discovered evidence or a ground that the applicant was at least not alerted to in some way."  *Perez v. State*, 816 N.W.2d 354, 360 (Iowa 2012) (citation omitted).  Smith's request for an exception cannot succeed if it involves issues in existence during the three-year period and were available to be addressed.  *Lopez–Penaloza v. State*, 804 N.W.2d 537, 542 (Iowa Ct. App. 2011).  Thus, we affirm the district court's dismissal of Smith's PCR application.

**Actual Innocence: Illegal Sentence**.

Similar to the applicant's approach in *Davis v. State*, Smith "stuffs" his substantive claim into several "envelopes." *See* No. 18-0078, 2019 WL 476478, at *2 (Iowa Ct. App. Feb. 6, 2019). We distill the various arguments down to another end-around to the statute-of-limitations problem. In this round, Smith raises a claim of illegal sentence "because the jury did not find him guilty of each element of the offense beyond a reasonable doubt." He argues this goes towards his actual innocence. Smith notes in *Schmidt v. State*, the Iowa Supreme Court held that "convicted defendants can attack their pleas when claiming actual innocence even if the attack is extrinsic to the pleas." 909 N.W.2d 778, 789 (Iowa 2018).

Here, Smith did not plead guilty. And with claims of actual innocence, an applicant must still comply with the three-year statute of limitations found in section 822.3 or prove an exception to the limitations period. *Dewberry v. State*, 941 N.W.2d 1, 5 (Iowa 2019); *Blakeman v. State*, No. 19-0375, 2020 WL 2060312, at *1 (Iowa Ct. App. Apr. 29, 2020). If the information an applicant "cites in support of his actual-innocence claim was available to him within the limitations [period, it] does not serve as a new ground of fact to toll the statute of limitations, or newly discovered evidence." *Demery v. State*, No. 19-1465, 2020 WL 1887955, at *2 (Iowa Ct. App. Apr. 15, 2020). We find no new evidence that meets the clear-and-convincing standard of proof to avoid application of the statute of limitations. As our supreme court noted "the demanding standard balance[s] the liberty interest of a factually innocent person to be free from conviction and criminal sanction against the state's legitimate interests in finality and the conservation of judicial

resources." *Dewberry*, 941 N.W.2d at 5 (holding "a [PCR] applicant can establish a claim of actual innocence only upon clear and convincing evidence he or she was factually innocent of the offense of conviction, including any lesser included offenses"). Smith has not met that burden here.

But, pointing to case law decided after his conviction, Smith draws our attention to *State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006), *superseded in part by statute* Iowa Code section 622.10(4)(a)(2) (2013)  Smith now contends that the use of the general verdict form allowed his jury to convict him under alternate theories that might not have required a life sentence for first-degree murder. *Heemstra* addressed this issue and held that failing to require proof of a defendant acting "willfully, deliberately, and with premeditation" or committing an independent felony cannot substantiate a charge of murder in the first degree because "[s]uch a holding would mean that every homicide, not justifiable or excusable, would occur in the commission of a felony, with the result that intent to kill and deliberation and premeditation would never be essential." 721 N.W.2d at 558 (quoting *People v. Moran*, 158 N.E. 35, 36 (N.Y. 1927)).

In *Heemstra,* our supreme court determined "if the act causing willful injury is the same act that causes the victim's death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes." *Id.* When a general verdict does not reveal the basis for a guilty verdict, reversal is required.[6]  *See State v. Hogrefe*, 557 N.W.2d 871, 881 (Iowa 1996) ("With a

---

[6] That is, until our legislature enacted Iowa Code section 814.28, which took effect July 1, 2019.  Section 814.28 provides:

> When the prosecution relies on multiple or alternative theories to prove the commission of a public offense, a jury may return a

general verdict of guilty, we have no way of determining which theory the jury accepted."). But *Heemstra* is of no help to Smith because it cannot be applied retroactively. 721 N.W.2d at 558 (limiting the decision to invalidate the felony-murder theory to "those cases not finally resolved on direct appeal in which the issue has been raised in the district court."). Smith's case does not fall into that category.

Finally, Smith argues there is no way to know if his jury convicted him of acting willfully, deliberately, and with premeditation. Considering the facts of Smith's case, there is substantial support for a conviction for first-degree murder such that Smith's sentence is appropriate. Photographs from the trial revealed a number of blows and injuries inflicted on the victim providing more than sufficient evidence of the elements of first-degree murder. *See State v. Linderman*, 958 N.W.2d 211, 222 (Iowa Ct. App. 2021) (holding that a jury could find the nature of the beating that requires infliction of injury over and over supports a finding of premeditation under the elements of first-degree murder). And in *Smith I*, we found "[t]he jury could have also inferred malice, premeditation, and specific intent to kill from the evidence indicating Smith was struck by a blunt object." 543 N.W.2d at 620. Likewise, in *Smith II*, the federal court summarized the act as Smith picking up a piece of pipe and beating the victim, ultimately crushing his skull. Smith also inflicted a stab wound in the jaw and strangled the victim. 171 F.3d at 570. As

---

general verdict. If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented and described in the complaint, information, indictment, or jury instruction is sufficient to sustain the verdict on at least one count.

noted in *Smith II*, there was plenty of damaging evidence against Smith.  *Id.* at 574. We find Smith's actual innocence claim and his theme of an illegal sentence fail to support any exception to the three-year statute of limitations for PCR filings.

**Ineffective Assistance of PCR Counsel.**

Because the PCR application is time-barred, the ineffective-assistance-of-counsel allegations against PCR counsel for failing to investigate Smith's PCR claims also fail.  Given our analysis above related to trial counsel and the failure to show an exception, Smith can identify no authority that allows him to file his PCR application twenty-three years after procedendo issued, so by extension, the PCR claim against his PCR counsel is time-barred.

**Conclusion.**

Given the timing of Smith's PCR application, we find no exception to the three-year statute of limitations.  After more than two decades since his conviction and the statutory three-year time bar, the district court correctly dismissed the PCR application.

**AFFIRMED.**