[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-13637

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 23, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-14249-CV-ASG

LENARD PHILMORE,

Petitioner-Appellant,

versus

WALTER A. MCNEIL,
Secretary, Florida Department
of Corrections,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(July 23, 2009)

Before TJOFLAT, BIRCH and WILSON, Circuit Judges.

PER CURIAM:

Lenard Philmore ("Philmore"), a Florida death row prisoner, appeals the district court's denial of habeas corpus relief under 28 U.S.C. § 2254. Philmore received the death penalty for the 1997 murder of Kazue Perron, whom he kidnapped and killed in order to use her vehicle for a bank robbery. After careful consideration of all the evidence and the parties' arguments, we AFFIRM.

## I. BACKGROUND

On 14 November 1997, Philmore carjacked at gunpoint a gold Lexus driven by Kazue Perron ("Perron") in Palm Beach, Florida. Philmore v. State, 820 So. 2d 919, 923-24 (Fla. 2002) (per curiam). Philmore and his co-defendant Anthony Spann ("Spann") planned to use the Lexus as the getaway vehicle in a bank robbery. Id. at 923. Spann had previously told Philmore they would have to kill the driver. Id. Philmore drove with Perron to an isolated area, with Spann following behind in a Subaru. Id. at 924. En route, Philmore took Perron's rings and placed them in the automobile's armrest. Id. After stopping at a side road, Philmore ordered Perron to exit the Lexus and walk towards some tall brush. Id. Perron protested and Philmore shot her once in the head. Id. Philmore disposed of her dead body in the brush. Id.

Philmore and Spann then drove to a bank in Indiantown. Id. While Spann waited in his Subaru, Philmore robbed a bank teller of $1100. Id. Afterwards,

2

Philmore put on Spann's shirt and discarded his own tank top by the roadside. Id. Authorities later recovered Philmore's tank top, which contained Perron's blood. Id. Philmore and Spann concealed the Subaru and returned to Palm Beach County in the stolen Lexus. Id. Later that day, a West Palm Beach police officer recognized Spann from an outstanding arrest warrant on an unrelated matter. Id. at 924-25. Spann and Philmore led the officer on a high-speed chase until a tire blew out on the Lexus. Id. at 925. The two men abandoned the vehicle and fled into an orange grove. Id. The police captured them and charged them with armed trespass. Id. Firearms were subsequently recovered from a creek in the orange grove. Id.

On 15 November 1997, Detective Gary Bach, who was investigating the Indiantown bank robbery, interviewed Philmore after Philmore agreed to waive his Miranda[1] rights. Id. at 927. Philmore admitted he was in the bank that had been robbed and he was in the Subaru after the bank robbery. Id. The interview ended when Philmore stated he wanted to talk with an attorney first and then speak with Detective Bach again. Id. That same day, Philmore was charged with the bank robbery and was appointed counsel, John Hetherington. Id. at 927 n.13.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

Philmore made a series of statements to the police in Hetherington's presence from 18 November through 26 November 1997, ultimately confessing to the bank robbery as well as to Perron's kidnapping and murder. Id. at 927. Philmore also talked to the police during two polygraph examinations without Hetherington being present. Id. Philmore signed a waiver of his Miranda rights before providing each statement. Id. On 21 November, Philmore showed the police where he had disposed of Perron's body. Id. at 925.

On 16 December 1997, Philmore agreed, in Hetherington's presence, to tell the grand jury of his involvement in Perron's abduction and shooting. Id. at 927. Philmore was indicted that same day for the first-degree murder of Perron, conspiracy to commit robbery with a deadly weapon, carjacking with a deadly weapon, kidnapping, robbery with a deadly weapon, and third-degree grand theft. Hetherington remained Philmore's counsel until December 1998, when the court appointed Thomas Garland ("Garland") and Sherwood Bauer to represent Philmore.

In January 2000, a jury convicted Philmore on all counts. In accordance with the jury's unanimous recommendation of death, the trial court sentenced Philmore to death for the first-degree murder of Perron; fifteen years of imprisonment for conspiracy to commit robbery with a deadly weapon; life

4

imprisonment for carjacking with a deadly weapon, kidnapping, and robbery with a deadly weapon; and five years of imprisonment for third-degree grand theft. See Philmore, 820 So. 2d at 926 n.10. The Florida Supreme Court affirmed Philmore's convictions and death sentence on direct appeal. See id. at 940. The Florida Supreme Court subsequently affirmed the denial of Philmore's motion for post-conviction relief under Florida Rule of Criminal Procedure 3.851, and denied his petition for a writ of habeas corpus. See Philmore v. State, 937 So. 2d 578, 580 (Fla. 2006) (per curiam).

In September 2006, Philmore filed this federal habeas corpus petition pursuant to 28 U.S.C. § 2254, in which he raised nineteen claims for relief. Following oral argument, the district court denied relief in July 2007. The district court granted a certificate of appealability on all issues but Philmore raises only four claims on appeal: (1) ineffective assistance of counsel by Hetherington; (2) trial court error in granting a peremptory strike, and ineffective assistance of counsel by Garland in not challenging the strike; (3) ineffective assistance of counsel by Garland in not calling Dr. Michael Maher as a witness during the penalty phase to testify that Philmore suffered from an extreme mental or emotional disturbance; and (4) trial court error in ignoring the testimony of Dr.

5

Frank Wood on the issue of whether Philmore qualified for the statutory mitigator of an extreme mental or emotional disturbance.

## II. DISCUSSION

When analyzing a district court's denial of a § 2254 habeas petition, we review de novo questions of law as well as mixed questions of law and fact. See Hannon v. Sec'y, Dep't of Corr., 562 F.3d 1146, 1150 (11th Cir. 2009). In order to obtain federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), Philmore must show that the state court decision adjudicating his claims (1) was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedents, or (2) unreasonably determined the facts in light of the evidence presented in the state courts. See id. (citing 28 U.S.C. § 2254 (d)). To garner relief under the first prong, the state court's application of Supreme Court precedent must have been "objectively unreasonable," not merely incorrect or erroneous. Wiggins v. Smith, 539 U.S. 510, 520-521, 123 S. Ct. 2527, 2535 (2003) (quotation marks and citation omitted). In assessing the second prong, we bear in mind that a state court's factual findings are presumed correct and may only be rebutted by clear and convincing evidence. See Hannon, 562 F.3d at 1150.

6

A. Ineffective Assistance of John Hetherington

Philmore contends that Hetherington deprived him of the effective assistance of counsel prior to his being charged for Perron's murder. According to Philmore, Hetherington actually assisted law enforcement in solving the murder case. Before Hetherington's appointment, law enforcement knew only that Philmore was involved in a trespass and the Indiantown bank robbery. Philmore contends that, without first conducting any independent investigation or securing a concession, Hetherington foolishly advised Philmore to cooperate with the police and give statements in counsel's absence. Hetherington's actions, Philmore maintains, ensured Philmore's murder conviction and death sentence. Consequently, Philmore asserts that Hetherington's performance fell not only below the standards of effective counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), but also below those set forth in Cronic v. United States, 466 U.S. 648, 104 S. Ct. 2039 (1984).

Philmore first raised a claim of ineffective assistance of counsel against Hetherington in a pretrial motion to suppress Philmore's incriminating statements. See Philmore, 820 So. 2d at 927. Specifically, Philmore contended that Hetherington had deprived him of his Sixth Amendment right to the effective assistance of counsel because Hetherington did not protect Philmore's right to

7

remain silent. See Philmore, 820 So. 2d at 927. Additionally, Philmore asserted that he did not make his statements freely and voluntarily because he believed that he would not be subject to the death penalty if he gave a full and honest statement. See id. Following an evidentiary hearing at which Hetherington testified, the trial court found that Philmore's statements made in counsel's presence during November 1997 were freely and voluntarily given without any promises, threats, or coercion. See id. However, the trial court granted the motion to suppress with respect to any statements Philmore made in the polygraph room outside of Hetherington's presence. See id. at 928. The trial court also later denied the motion to suppress in relation to Philmore's grand jury testimony on 16 December 1997. See id.

In his direct appeal, Philmore argued that the trial court erred in denying the motion to suppress on grounds that: (1) his statements were not freely and voluntarily given under the Fifth Amendment, and (2) Hetherington had provided ineffective assistance of counsel under the Sixth Amendment in allowing him to make the statements. See id. at 926. The Florida Supreme Court concluded that Philmore's Fifth Amendment rights had not been violated. See id. at 928. Not only had there been no quid pro quo bargain for Philmore's statements, but Philmore had knowingly waived his Miranda rights in writing before giving each

8

statement.  See id.  The Florida Supreme Court declined to review Philmore's

Sixth Amendment claim at the direct appeal stage, however.  See id.  Instead, the

claim was "denied without prejudice to reraise the claim in a rule 3.850 motion."

See id. at 928-29.

Philmore renewed his claim of ineffective assistance of counsel against

Hetherington in a rule 3.851 motion for post-conviction relief.  Philmore alleged

that Hetherington failed to investigate Philmore's case before advising him to give

incriminating statements to law enforcement, allowed Philmore to give

incriminating statements despite knowing that Philmore would implicate himself in

Perron's murder, failed to be present with Philmore during statements given to law

enforcement, and failed to secure a plea agreement before Philmore made his

incriminating statements.  Hetherington again testified at an evidentiary hearing on

these claims.  After making extensive factual findings concerning counsel's

performance, the state judge concluded that Hetherington was not ineffective under

the standards of Strickland.

The Florida Supreme Court agreed.  See Philmore, 937 So. 2d at 585.  The

court recited the Strickland standards for demonstrating ineffective assistance of

counsel before summarizing the evidence as follows:

> At the hearing, Hetherington testified at length regarding his decisions
> during his representation of Philmore.  Although Hetherington could

9

not recall exactly when in the sequence of Philmore's confessions he learned of specific pieces of information, Hetherington consistently testified that his advice to Philmore to cooperate was based on Philmore's statements, first that Philmore was not involved in the abduction and then that Philmore was not the shooter. Hetherington also testified that while he views information given by defendants with some skepticism, he believed Philmore because Hetherington had information that Spann was wanted for other murders. After it became apparent that Philmore had lied about his lack of involvement in the abduction, Hetherington admonished Philmore about telling Hetherington the truth. Hetherington believed that Philmore understood the importance of being honest and would no longer be untruthful.

Hetherington also advised Philmore not to speak with law enforcement officers or submit to polygraph examinations if Philmore was not being candid about his role in Perron's murder. Philmore nonetheless chose to make statements to law enforcement officers. Philmore presented no evidence to rebut Hetherington's testimony that Philmore wanted to speak to law enforcement officers even after counsel advised him of the risk.

Moreover, Philmore's first statement to police after Hetherington began representing him was consistent with what Philmore had told Hetherington – that he was not involved in Perron's abduction or murder. It was Philmore's spontaneous statement prior to the first polygraph examination that exposed his deceit. The trial court found that even if Hetherington had been present at this time, Hetherington could not have stopped Philmore from admitting that he was present during the abduction. Hetherington testified that after Philmore's first confession about his involvement in the abduction, Hetherington had to reevaluate his strategy. Hetherington stated that he believed that if Philmore was not the shooter, Philmore's best chance to avoid the death penalty was to present Philmore as a cooperating nonshooter who played a minor role in the felony murder. Once Philmore admitted he was the shooter, Hetherington believed that Philmore had nothing to lose by making additional statements to law enforcement officers.

10

Id. at 584-85. This evidence supported the trial court's finding that Hetherington made "'informed, strategic choices, based on the information that Mr. Hetherington had at the time, which were substantially influenced by [Philmore's] own statements and wishes, which seemed reasonable in consideration of all the facts and circumstances known to Mr. Hetherington at the time each statement was made.'" Id. at 585. In a footnote, the Florida Supreme Court added that "[b]ecause we conclude that Philmore has failed to establish that he received ineffective assistance of counsel during police questioning, we decline to address the State's argument that Philmore's Sixth Amendment right to counsel for the murder had not attached at this time." See id. at 584 n.6.

We agree with the state courts that habeas relief should be denied on this claim, but for a different reason: Philmore cannot establish a violation of his constitutional right to the effective assistance of counsel prior to his being charged for Perron's murder because his Sixth Amendment right to counsel as to that offense had not yet attached. Both Strickland and Cronic, upon which Philmore relies, recognize that the right to the effective assistance of counsel stems from the Sixth Amendment's right to the assistance of counsel in all criminal prosecutions. See Strickland, 466 U.S. at 686, 104 S. Ct. at 2063 (noting that the Sixth Amendment's "'right to counsel is the right to the effective assistance of

11

counsel'"); accord Cronic, 466 U.S. at 654, 104 S. Ct. at 2044. The Sixth Amendment right is "offense specific" though. McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S. Ct. 2204, 2207 (1991). "It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Id. (quotation marks and citation omitted); see also Rothgery v. Gillespie County, Tex., ___ U.S. ___, ___, 128 S. Ct. 2578, 2592 (2008) (reaffirming that "a criminal defendant's initial appearance before a judicial officer, where he learns the charge against him and his liberty is subject to restriction, marks the start of adversary judicial proceedings that trigger attachment of the Sixth Amendment right to counsel"). This rule enforces the purpose of the Sixth Amendment counsel guarantee, which is to protect a suspect "*after* the adverse positions of government and defendant have solidified with respect to a particular alleged crime." McNeil, 501 U.S. at 177-78, 501 S. Ct. at 2208-09 (quotation marks and citation omitted). Accordingly, the Supreme Court held in McNeil that the Sixth Amendment right to counsel "poses no bar to the admission of the statements" made in connection to offenses for which the suspect had not been charged, despite the attachment of the

12

Sixth Amendment right on unrelated charged offenses. Id. at 176, 501 S. Ct. at 2208.

The McNeil rule applies even in situations where, as here, the charged and uncharged offenses are factually related. See Texas v. Cobb, 532 U.S. 162, 167-68, 121 S. Ct. 1335, 1340-41 (2001). The defendant in Cobb was charged only with burglary at the time he confessed to murdering a woman and her young daughter during his commission of that burglary. See id. at 165-66, 121 S. Ct. at 1339. The Supreme Court explained that McNeil's offense-specific definition does not include an exception for uncharged crimes that are factually related to those that have actually been charged. See id. at 168, 121 S. Ct. at 1340-41. However, the Court clarified that "when the Sixth Amendment right to counsel attaches, it does encompass offenses that, even if not formally charged, would be considered the same offense under the Blockburger test." Id. at 173, 121 S. Ct. at 1343. Blockburger states that "'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" Id. (quoting Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932)). Since burglary and capital murder required proof of different facts under Texas law, they were not the same offense

13

under Blockburger.  Id. at 174, 121 S. Ct. at 1344.  Accordingly, the Supreme Court concluded that "the Sixth Amendment right to counsel did not bar police from interrogating respondent regarding the murders, and respondent's confession was therefore admissible."  Id.

The principles enunciated in McNeil and Cobb dictate the result here. During the time period that Hetherington's representation was allegedly deficient, Philmore had been charged only with armed trespass and the Indiantown bank robbery.  There had been no formal charge, preliminary hearing, indictment, information, or arraignment against Philmore for his involvement in Perron's murder.  Under the Blockburger test, the crimes of armed trespass and third-degree grand theft are different offenses from first-degree murder because they require proof of different facts.  Compare Fla. Stat. Ann. § 810.09(1)(a)1, (2)(c) (1997) (requiring entry with a firearm or other dangerous weapon onto property as to which notice against entering was posted or otherwise communicated) with § 812.014(2)(c)1 (requiring the unlawful taking of another's property valued at $300 or more but less than $5000) and § 782.04(1)(a)1 (requiring a premeditated design to effect a person's death).  Hetherington's challenged representation therefore occurred before Philmore's Sixth Amendment right to counsel had attached with respect to Perron's murder.  See Cobb, 532 U.S. at 173, 121 S. Ct. at 1343;

14

McNeil, 501 U.S. at 175, 111 S. Ct. at 2207.  Absent a Sixth Amendment right to counsel, there can be no violation of the Sixth Amendment right to the effective assistance of counsel.  Accordingly, Philmore's claims against Hetherington must fail.

Nor can Philmore rely on the right to counsel connected to the Fifth Amendment's protection against self-incrimination.  Other than a cursory allegation of a Fifth Amendment deprivation, Philmore makes no argument and provides no citation of authority as to how this right was violated.  Consequently, Philmore has abandoned this claim.[2]  See Flanigan's Enter., Inc. of Ga. v. Fulton County, Ga., 242 F.3d 976, 987 n.16 (11th Cir. 2001) (per curiam) (stating that the failure to "elaborate or provide any citation of authority in support of" an allegation in a brief results in the waiver of that argument).

Even if Philmore had not waived this claim, we find it lacking in merit.  The Fifth Amendment's guarantee against self-incrimination includes the prophylactic right to have counsel present during custodial interrogation.  See McNeil, 501 U.S. at 176, 111 S. Ct. at 2208.  "Once a suspect invokes the Miranda right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any*

---

[2] For the same reason, Philmore has abandoned his claims that Hetherington's representation deprived him of his Fourth, Eighth, and Fourteenth Amendment constitutional rights.

15

offense unless counsel is present." Id. at 177, 111 S. Ct. at 2208.  Thus, unlike the

Sixth Amendment right to counsel, this rule is "*not* offense specific." Id.  In

Philmore's case, once he requested an attorney during his initial interview as to the

bank robbery, Hetherington was appointed as his attorney and remained present

during Philmore's discussions with law enforcement agents about Perron's

abduction and murder.  Any statements made by Philmore outside of counsel's

presence during the polygraph examinations were excluded by the trial court.  See

Philmore, 820 So. 2d at 928.  Accordingly, the Fifth Amendment provides no basis

for habeas relief.

Based on the foregoing, we affirm the denial of habeas relief as to

Philmore's claims of ineffective assistance of counsel against Hetherington.

B.      Batson Violation and Trial Counsel's Effectiveness in Challenging a
        Peremptory Strike

Next, Philmore asserts that the trial court erred in granting the state's

peremptory strike of a prospective black juror, Tajuana Holt ("Holt").  According

to Philmore, the state failed to articulate a genuine, race-neutral explanation as

required by Batson v. Kentucky, 476 U.S. 79, 97, 106 S. Ct. 1712, 1723 (1986).

Furthermore, Philmore asserts that his trial counsel did not effectively challenge

the strike.  Had counsel done so, Philmore contends there is a reasonable

16

probability that Holt could have swayed the entire jury to vote for life imprisonment.

Holt stated in her jury questionnaire that "I feel that people shouldn't get the death penalty. Just let them stay in prison for the rest of their lives." Philmore, 820 So. 2d at 929. During voir dire, however, Holt stated that the death penalty may be appropriate in some cases. See id. The prosecutor offered three reasons for peremptorily striking Holt: (1) Holt's answers in her questionnaire differed from her responses during voir dire; (2) Holt's mother, who was a managing clerk in the trial judge's division, had advised the prosecution that it would do better without her daughter on the jury; and (3) the prosecutor thought Holt was sleeping throughout voir dire. See id. at 929-30. Based on the variance between Holt's answers to the jury questionnaire and her responses during voir dire, the trial court concluded that the government's explanation was facially race neutral and therefore granted the peremptory strike. See id. at 930. Philmore's counsel, Garland, objected to the strike but did not renew the objection before the jury was sworn. See id.

The Florida Supreme Court decided on direct appeal that Philmore's Batson claim had been waived because his trial counsel failed to renew his objection to the peremptory strike before the jury was sworn. See id. The Florida Supreme Court

17

cited several cases where this procedural default rule had been regularly applied under Florida law. See id. The Florida Supreme Court alternatively ruled that "even if this claim was not procedurally barred, it has no merit because the State has advanced a facially race-neutral non-pretextual reason for peremptorily challenging Holt." Id. In Philmore's post-conviction proceedings, the Florida Supreme Court reiterated that the substantive issue of the strike's validity was procedurally barred. See Philmore, 937 So. 2d at 585.

We are precluded from considering Philmore's Batson claim because "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." Parker v. Sec'y for the Dep't of Corr., 331 F.3d 764, 771 (11th Cir. 2003) (quotation marks and citation omitted). A federal habeas claim may not be reviewed on the merits where a state court determined, as here, that the petitioner failed to comply with an independent and adequate state procedural rule that is regularly followed. See Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006). We must abide by the Florida Supreme Court's decision, even though the court made an alternative merits ruling. See Parker, 331 F.3d at 774-75 (explaining that "an alternative merits holding leaves the procedural bar in place").

18

Furthermore, Philmore does not argue that there is any cause or prejudice to excuse his procedural default. See Siebert, 455 F.3d at 1272. The requisite cause "ordinarily turns on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. (quotation marks and citation omitted). In the absence of any argument or evidence that cause and actual prejudice exists, we conclude that Philmore fails to satisfy this equitable exception to the procedural bar doctrine.

We therefore turn to the issue of trial counsel's effectiveness in challenging the strike. Strickland requires a petitioner to show both that his counsel's performance was deficient, and that the deficiency prejudiced his defense. See Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. A deficient performance means that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. An attorney's actions need only fall within "the wide range of professionally competent assistance" to pass constitutional muster. Id. at 690, 104 S. Ct. at 2066. Moreover, appellate courts should not second-guess counsel's assistance. Id. at 689, 104 S. Ct. at 2065. "Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

19

To counteract the distorting effects of hindsight, the petitioner bears the burden of overcoming a strong presumption that the challenged action is sound trial strategy. Id. That presumption may be rebutted if the petitioner establishes "that no competent counsel would have taken the action that his counsel did take." Haliburton v. Sec'y for the Dep't of Corr., 342 F.3d 1233, 1243 (11th Cir. 2008) (quotation marks and citation omitted). In order to establish prejudice, the petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. We need not analyze the prejudice prong if a defendant fails to establish deficient performance, or vice versa. See Porter v. Att'y Gen., 552 F.3d 1260, 1269 (11th Cir. 2008) (per curiam).

We agree with the Florida Supreme Court that Philmore cannot establish any prejudice from his attorney's performance given its previous alternative holding that the strike was facially race-neutral and non-pretextual. See Philmore, 937 So. 2d at 585. Aside from the lack of prejudice, we also conclude that counsel was not deficient. Philmore contends that trial counsel failed to challenge the strike. To the contrary, Garland objected to the state's peremptory strike on grounds that it

20

was race-based, and objected to the statement of the prospective juror's mother as being hearsay. Philmore argues that his attorney should have determined what questions the prosecution asked Holt's mother and whether the state had questioned family members of prospective white jurors. Such information would have made little difference, however, because the trial court based its decision on the prosecution's first reason for the strike – namely, the differences in Holt's answers regarding the death penalty. Accordingly, Philmore has failed to show that his counsel's performance fell outside "the wide range of reasonable professional assistance," or a reasonable probability that, but for his attorney's actions, the result of the proceeding would have been different. Strickland, 466 U.S. at 689, 694, 104 S. Ct. at 2065, 2068. The district court correctly denied habeas relief on this claim.

C. Trial Counsel's Effectiveness During The Penalty Phase

Philmore asserts that his counsel was ineffective in failing to call Dr. Michael Maher as a witness during the penalty phase to testify that Philmore's organic brain damage supported the statutory mitigator of an extreme mental or emotional disturbance. During the guilt phase of the trial, the state had impeached Philmore's expert witness, Dr. Robert Berland, based on his use of an outdated medical test to evaluate Philmore's brain injury. Philmore contends that because

21

of this impeachment, it was imperative that Garland utilize Dr. Maher as a witness. If Dr. Maher had testified about this statutory mitigator, Philmore submits the outcome of the penalty phase would have been different.

Dr. Maher testified at a 1999 deposition and a 2004 state post-conviction evidentiary hearing. In his deposition, Dr. Maher, a psychologist, stated that during his interview of Philmore, Philmore "fully and completely" accepted responsibility for his actions and admitted being a "willing participant" in the crimes. R1-13, Accordion Folder 8, Exh. C-10, Vol. X, at 1439. Philmore's version of the events to Dr. Maher comported with his statements to the police. Dr. Maher believed these statements were factually accurate and that Philmore "was engaged in his usual pattern of criminal activity" when the crimes occurred. Id. at 1440.

At the 2004 evidentiary hearing, Dr. Maher testified that a brain scan showed Philmore had an abnormality in the frontal lobes of his brain which caused Philmore to act impulsively. Dr. Maher admitted that he did not view Philmore's killing of Perron as an entirely impulsive act, however. Additionally, Dr. Maher testified that although Spann influenced Philmore, Dr. Maher was unable to conclude that Philmore had acted under the substantial domination of another. If Dr. Maher had been called at trial, he stated he would have testified that Philmore

22

qualified for two other statutory mitigators: (1) extreme mental or emotional disturbance, and (2) substantial impairment of the capacity to appreciate the criminality of his conduct.

The state post-conviction judge found that Garland spoke with Dr. Maher on several occasions and reviewed Dr. Maher's deposition and report. After consulting with co-counsel, Garland decided not to call Dr. Maher as a witness because he did not believe that Dr. Maher would add anything to Philmore's case. The state judge further found that Dr. Maher's opinion would have conflicted with two defense experts, Dr. Frank Wood and Dr. Berland. According to Dr. Maher, Philmore suffered brain damage in his frontal lobe, whereas Dr. Wood testified at trial that Philmore's brain abnormality was located towards the back section. In addition, Dr. Maher would have been unable to support Dr. Berland's testimony that Philmore was under the substantial domination of his co-defendant, Spann.

The Florida Supreme Court concluded that Philmore had failed to demonstrate either deficient performance or prejudice under Strickland. See Philmore, 937 So. 2d at 586-87. Dr. Maher's opinions would have partially contradicted those of the other defense experts, whose credibility had already been undermined by the state's expert. Id. at 586. It was therefore reasonable for trial counsel not to present conflicting expert opinions. See id. Moreover, the Florida

Supreme Court determined that the record supported the trial court's finding that Garland made a tactical decision not to call Dr. Maher. "Although Garland did not explain with specificity his reasons for not utilizing Dr. Maher, Garland clearly considered this alternative and rejected it." Id. at 587. Besides failing to establish any deficiency, Philmore also failed to establish any prejudice. See id. Garland had presented mitigation evidence through two experts and several lay witnesses. Given that both of those experts' testimony were impeached by the state, the Florida Supreme Court reasoned that the state could have successfully challenged Dr. Maher's opinions as well. See id. Consequently, the Florida Supreme Court concluded that trial counsel was not ineffective in this matter. See id.

The state courts reasonably determined the facts from the record and reasonably applied Strickland in evaluating counsel's effectiveness. The evidence establishes that trial counsel investigated the possibility of utilizing Dr. Maher but ultimately determined that Dr. Maher's testimony was not necessary. Even though counsel did not elaborate further on his reasons, Philmore bore the burden of rebutting the strong presumption that counsel exercised reasonable professional judgment. See Chandler v. United States, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc) ("'[W]here the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he

24

exercised reasonable professional judgment.'"). This presumption of reasonableness was supported by evidence that Dr. Maher differed on key issues from the other defense experts. In addition to the inconsistencies noted by the state courts, Dr. Maher conflicted with Dr. Berland as to whether Philmore had an impaired capacity to appreciate the criminality of his conduct. Specifically, Dr. Berland testified at trial that Philmore "could appreciate the criminality of his conduct" and "knew what he was doing was wrong." R1-13, Accordion Folder 4, Exh. A-23, Vol. XXIII, at 2138-39. Dr. Maher believed the opposite, opining that Philmore's capacity to appreciate the criminality of his conduct was substantially impaired. This difference in opinion would have weakened the credibility of both experts.

Furthermore, Garland was not obligated to use Dr. Maher merely because Dr. Maher might have bolstered Dr. Berland's impeached testimony with respect to the mitigator of an extreme mental or emotional disturbance. Counsel has no absolute duty to present all mitigating evidence, even if the additional evidence would have been compatible with counsel's strategy. See Chandler, 218 F.3d at 1319. "Considering the realities of the courtroom, more is not always better." Id. Rather, Garland's duty at the penalty phase was to investigate possible mitigating factors and make a reasonable effort to present mitigating evidence. See McClain

25

v. Hall, 552 F.3d 1245, 1250 (11th Cir. 2008). Garland fulfilled that duty here. Philmore has not shown that counsel's decision in this matter was constitutionally deficient.

Nor has Philmore demonstrated any prejudice. To show prejudice, Philmore must establish a reasonable probability that "absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland, 466 U.S. at 695, 104 S. Ct. at 2069. This is not a situation where trial counsel failed to present any mitigating evidence. As the Florida Supreme Court found, two experts and several lay witnesses testified at the penalty phase in support of mitigation. See Philmore, 937 So. 2d at 587. The trial court found several nonstatutory mitigators based in part on Philmore's abusive childhood, his history of drug and alcohol abuse, his cooperation with the state, and his expressed remorse for killing Perron. See Philmore, 820 So. 2d at 925-26. These mitigating factors were outweighed by five aggravating circumstances, however, which included that Philmore committed the capital felony for pecuniary gain and did so in a cold, calculated, and premeditated manner.[3] See id. at 925. Philmore has not demonstrated a reasonable probability

---

[3] The trial court also found the remaining three aggravators: (1) Philmore was previously convicted of another capital felony or of a felony involving the use or threat of violence to the person; (2) the capital felony was committed during a kidnapping; and (3) the capital felony was committed for the purpose of avoiding or preventing a lawful arrest. See Philmore, 820 So. 2d at

26

that the addition of a third expert, who would have offered partially inconsistent opinions with the other defense experts, would have tilted the scales in favor of a life sentence.

Accordingly, the state courts reasonably determined that counsel's decision not to utilize Dr. Maher during the penalty phase was neither deficient nor prejudicial.

D.   Trial Court Error in Rejecting the Statutory Mitigator of Extreme Mental or Emotional Disturbance

Philmore contends in his final argument that the trial court ignored Dr. Frank Wood's testimony during the penalty phase, which purportedly establishes the statutory mitigator of an extreme mental or emotional disturbance. Philmore bases his argument on the sentencing order, which made no mention of Dr. Wood and focused instead on the state's impeachment of Dr. Berland. According to Philmore, the trial court ignored the school records, physical exam, and brain imaging scan results that Dr. Wood relied upon to establish Philmore's brain damage. Philmore submits that the trial court's failure to consider this evidence violated Eddings v. Oklahoma, 455 U.S. 104, 114, 102 S. Ct. 869, 876-77 (1982), in which the Supreme Court held that a sentencing court may not refuse to consider, as a matter of law, any relevant mitigating evidence. Philmore

925.

acknowledges that the Florida Supreme Court denied habeas relief on this claim because it was not raised on direct appeal, yet he maintains that this was due to ineffective assistance of appellate counsel.

The Florida Supreme Court found that Philmore's claim that the trial court erred in failing to consider Dr. Wood's testimony was procedurally barred. See Philmore, 937 So. 2d at 588. Although Philmore's attorney argued on direct appeal that the trial court erred in rejecting the statutory mitigator of an extreme mental or emotional disturbance, appellate counsel did not raise a separate claim that the trial court erred in failing to consider Dr. Wood's testimony. See id. Thus, the claim was procedurally barred because it could have been raised on direct appeal. See id.

The Florida Supreme Court also rejected Philmore's attempt to raise the issue as a claim of ineffective assistance of appellate counsel. See id. The trial court thoroughly considered whether to apply the statutory mitigator of an extreme mental or emotional disturbance, and the Florida Supreme Court previously concluded on direct appeal that the trial court's rejection of this mitigator was "supported by competent, substantial evidence." Id. Philmore's habeas claim was "merely an additional argument in support of the claim previously raised on direct

appeal." Id. Accordingly, the Florida Supreme Court concluded that Philmore's claim of ineffective assistance of appellate counsel lacked merit. See id.

Florida law bars claims in a state post-conviction proceeding that could have been raised on direct appeal. See Muhammad v. Sec'y, Dep't of Corr., 554 F.3d 949, 956-57 (11th Cir. 2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Edwards v. Carpenter, 529 U.S. 446, 451, 120 S. Ct. 1587, 1591 (2000) (quotation marks and citation omitted). Accordingly, before a federal habeas court may consider the merits of a procedurally defaulted claim, a petitioner "must demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Muhammad, 554 F.3d at 957 (quotation marks and citation omitted). An attorney's constitutional ineffectiveness in failing to preserve a claim for review in state court may constitute "cause" to excuse a procedural default. Edwards, 529 U.S. at 451, 120 S. Ct. at 1591; accord Payne v. Allen, 539 F.3d 1297, 1314 (11th Cir. 2008) ("Thus, to determine cause and prejudice, we must ascertain whether Payne has

29

shown ineffective appellate counsel in not timely raising his ineffective-trial-counsel claims.").

Here, the Florida Supreme Court correctly determined that Philmore's habeas claim was procedurally defaulted because Philmore could have but did not specifically raise it on direct appeal. See Philmore, 937 So. 2d at 588. To excuse his procedural default, Philmore asserts that his appellate counsel, Patrick C. Rastatter, was ineffective in not raising the claim on direct appeal. Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under Strickland. See Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991). In assessing an appellate attorney's performance, we are mindful that "the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue." Id. at 1130-31. Rather, an effective attorney will weed out weaker arguments, even though they may have merit. See id. at 1131. In order to establish prejudice, we must first review the merits of the omitted claim. See id. at 1332. Counsel's performance will be deemed prejudicial if we find that "the neglected claim would have a reasonable probability of success on appeal." Id.

The omitted claim in this case was closely related to the claim raised by Philmore's appellate counsel on direct appeal. Counsel asserted on direct appeal that "[t]he trial court erred in failing to find that the capital felony was committed

30

while [Philmore] was under the influence of extreme mental or emotional disturbance." R1-13, Accordion Folder 5, Exh. A-31, Initial Brief of Appellant at 91. In support of this argument, appellate counsel recounted Dr. Wood's review of Philmore's brain imaging scan and school records, and Dr. Wood's opinion that Philmore's brain injury caused his abnormal behavior. Appellate counsel then argued that the sentencing court erroneously dismissed the expert mental health findings of both Dr. Wood and Dr. Berland in rejecting the mitigating circumstance of an extreme mental or emotional disturbance. This argument is very similar to the omitted claim now raised in the instant habeas petition – that the trial court erroneously ignored Dr. Wood's testimony in rejecting the mitigating circumstance of an extreme mental or emotional disturbance. Both claims focus on the same underlying issue, the applicability of the statutory mitigator of an extreme mental or emotional disturbance.

In light of its determination on direct appeal that this statutory mitigator did not apply, the Florida Supreme Court correctly concluded that Philmore did not receive ineffective assistance of appellate counsel. The omitted claim relies on the same facts and challenges the identical trial court decision that was affirmed on direct appeal. Appellate counsel's failure to challenge that decision under a different legal theory cannot be considered deficient performance, especially given

31

that counsel raised eleven other enumerations of error in a one-hundred page brief.

Compare Heath, 941 F.2d at 1131 (concluding that appellate counsel in death penalty case was deficient in raising only one issue in a six-page argument). Nor can Philmore establish any prejudice from his attorney's omission since the Florida Supreme Court already concluded that "the trial court's rejection of this statutory mitigator is supported by competent substantial evidence." Philmore, 820 So. 2d at 937. Accordingly, the Florida Supreme Court reasonably rejected Philmore's claim of ineffective assistance of appellate counsel.

As Philmore has failed to show cause and prejudice to excuse his procedural default, we may not review the merits of his defaulted claim. See Edwards, 529 U.S. at 451, 120 S. Ct. at 1591. No exception to this rule applies here as Philmore does not assert that our failure to review his claim will result in a fundamental miscarriage of justice. See id. We therefore affirm the district court's denial of habeas relief on this issue.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment denying habeas relief.

AFFIRMED.

TJOFLAT, Circuit Judge, specially concurring:

I agree with the court that John Hetherington was not representing Philmore under the Sixth Amendment Assistance of Counsel Clause[1] at the time of his allegedly deficient performance. Philmore had not yet been charged with the offenses for which he was eventually indicted; hence, the Assistance of Counsel Clause had not come into play.

I write separately for two reasons. First, the reading audience may wonder how it came about (1) that the Supreme Court of Florida, on direct appeal, treated Philmore's claim that his statements to the police and grand jury were the product of Hetherington's ineffective assistance of counsel as a claim based on the Sixth Amendment's Assistance of Counsel Clause and then invited Philmore to pursue such a claim on collateral attack,[2] and (2) that the district court likewise treated the

---

[1] The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." The Sixth Amendment's Assistance of Counsel Clause was made applicable to the states through the Fourteenth Amendment's Due Process Clause in Gideon v. Wainwright, 372 U.S. 335, 342-45, 83 S. Ct. 792, 795-97, 9 L. Ed. 2d 799 (1963).

[2] Philmore v. State, 820 So. 2d 919, 928-29 (Fla. 2002) (per curiam), cert. denied, 537 U.S. 895, 123 S. Ct. 179, 154 L. Ed. 2d 162 (2002) (Philmore I). Because ineffective assistance claims (which are generally brought under the Sixth Amendment) are, with minor exception, litigated in collateral proceedings, where the salient facts regarding the reasons why counsel performed as he or she did can be established, the supreme court declined to consider the claim on direct appeal as part and parcel of Philmore's pretrial motion to suppress and dismissed the claim without prejudice to Philmore's right to raise the claim in a collateral proceeding brought under Fla. R. Crim. P. 3.850. Id.

33

claim as a viable Sixth Amendment claim by issuing a certificate of appealability, only to have this court summarily reject the claim for the obvious reason that the Assistance of Counsel Clause had no application at all.  Second, some in the reading audience may conclude from such treatment that Hetherington's performance was immune to a federal constitutional challenge, that is, that Philmore's statements could not have been excluded on the constitutional ground that they were the product of ineffective assistance of counsel.  Such a deduction would be incorrect; Philmore simply failed to raise his challenge in a cognizable manner.

The truth is that Hetherington's performance was subject to challenge under the Fifth Amendment, as the state trial court recognized in ruling on Philmore's pretrial motion to suppress the statements at issue.  Hetherington had represented Philmore because Philmore, having been advised of his Miranda[3] rights, had asked for the appointment of counsel at the time of police questioning, and Hetherington had been appointed for that purpose.[4]  At the evidentiary hearing on the motion to

---

[3]  Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4]  As a consequence of his arrest and detention, Philmore had the right to assert his Fifth Amendment privilege against self-incrimination before the police questioned him.  The privilege included the right to have counsel present during questioning.  (In Malloy v. Hogan, the Supreme Court held that the Fifth Amendment's Self-Incrimination Clause applies to the states through the Due Process Clause of the Fourteenth Amendment.  378 U.S. 1, 3, 84 S. Ct. 1489, 1491, 12 L. Ed. 2d 653 (1964).)  Under Miranda, if the detained person is indigent, as Philmore was at the time, the police, i.e., the prosecutorial authority, must provide counsel for him prior to

suppress, the trial court understood the Fifth Amendment source of Hetherington's

appointment. After hearing the relevant testimony, the court found that the quality

of Hetherington's representation satisfied the Fifth Amendment's requirement[5] and

denied the motion with respect to the statements Philmore made in Hetherington's

presence,[6] but it granted the motion as to the statements Philmore made in the

polygraph setting outside Hetherington's presence.

I begin my discussion by reviewing briefly the circumstances leading to

Hetherington's appearance as Philmore's counsel and comprising his

representation of Philmore. From there, I explore the hearing on Philmore's

motion to suppress and the trial court's ruling and explain how Philmore's

ineffective assistance claim later (and erroneously) became a claim under the Sixth

Amendment's Assistance of Counsel Clause rather than the Fifth Amendment's

Self-Incrimination Clause. Finally, I describe the ways in which Hetherington's

---

questioning. Miranda, 384 U.S. at 472-74, 86 S. Ct. at 1626-28. Philmore exercised that right during the police's questioning of him about the armed bank robbery, and Hetherington was appointed to represent him.

[5] My reading of the transcript of the evidentiary hearing on Philmore's motion to suppress is that the court used the Sixth Amendment standard for evaluating effective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), in assessing the quality of Hetherington's performance under the Fifth Amendment.

[6] The court, in a later ruling, denied the motion to suppress the statements Philmore made before the grand jury (out of Hetherington's presence).

performance properly could have been, although in this case was not, challenged on federal habeas review.

## I.

Defendant Philmore was arrested by the Martin County Sheriff's Office on November 14, 1997 for armed trespass on posted land. During a police interrogation in the early morning hours of November 15, Philmore also confessed to participating in an armed bank robbery and, then, invoked his right to counsel under the Fifth and Fourteenth Amendments.[7] At that point, the police properly suspended the interrogation and, that same day, provided John Hetherington, an assistant public defender, to represent Philmore during the balance of the police investigation. No court ever appointed Hetherington; he represented Philmore as a volunteer at the request of the police following Philmore's invocation of his Fifth Amendment rights. Indeed, at the time of Hetherington's entry into the matter, no case was pending, or other formal proceeding had taken place, against Philmore.

---

[7] In state criminal proceedings, as here, a defendant's right against self-incrimination, which includes and is protected by the right to counsel during police interrogation, is rooted in the Fifth Amendment, as incorporated and made applicable to the states by the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 3, 84 S. Ct. 1489, 1491, 12 L. Ed. 2d 653 (1964) (incorporating the Fifth Amendment right against self-incrimination against the states through the Fourteenth Amendment); see Miranda v. Arizona, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 1612, 16 L. Ed. 2d 694 (1966) (the right against self-incrimination includes the right to the presence of an attorney during interrogation). As a technical matter, then, this right is available pursuant to the Fourteenth Amendment for state defendants. For simplicity, however, I will refer to this incorporated cluster of rights as the defendant's rights under the Fifth Amendment.

Almost immediately following the provision of Hetherington to serve as Philmore's Fifth Amendment counsel, attorney and client began to discuss the abduction and likely murder of Kazue Perron. Philmore insisted to Hetherington that he had no knowledge concerning an abduction or murder of Perron, and, based on that representation, the bank robbery to which Philmore had already admitted, and other serious charges Philmore was facing in another county, Hetherington decided that Philmore's best option was to cooperate with police. Thus, Hetherington allowed the police to interview Philmore again on November 18.

At the November 18, 1997 interview, the police questioned Philmore about the Perron abduction and murder. Consistent with his conversations with his attorney, Philmore denied any knowledge. Seeking to confirm the veracity of this statement, the police asked Philmore to submit to a polygraph examination. After receiving assurances from his client that he was telling the truth, and warning his client that there would be serious consequences if he were not telling the truth, Hetherington agreed to present Philmore for the examination, which went forward on November 20. Pursuant to the local polygraph protocol, Hetherington was not permitted in the room while the police examined his client. Nevertheless, when Philmore's story began to change during that first polygraph examination, the detective administering the test ceased his questioning and notified Hetherington

37

that there was a problem. Apparently, Philmore was now willing to acknowledge that he was present for and had knowledge of Perron's abduction and murder, but he maintained that he was not the triggerman directly responsible for her death.

After further consultation, convinced that Philmore was now telling the truth and discerning that Philmore's best strategy was to position himself as a cooperating non-shooter, Hetherington next agreed to permit a second police interview with Philmore, on November 21. At that interrogation, Philmore admitted to being present for the abduction and murder, maintained that he was not the shooter, and agreed to help the police locate Perron's body. In order to confirm Philmore's latest story, the police, with Hetherington's consent, subjected Philmore to a second polygraph examination on November 23, again outside of Hetherington's presence. Hetherington advised his client not to continue cooperating, and to make no further statements, if he was, in fact, the shooter. For a second time, however, Philmore failed the polygraph examination: it was now clear that Philmore was the shooter.

Now backed into a corner due to his client's lack of candor, Hetherington came to the conclusion that, if Philmore was the shooter, he might as well be a cooperating shooter if he were to have any hope for prosecutorial leniency. Accordingly, on November 26, 1997, he permitted the police to interview Philmore

38

for a third time.  On this occasion, Philmore gave a full confession to the abduction and murder.  Furthermore, Philmore agreed, with Hetherington's consent, to testify before the grand jury on December 16, 1997, about his role in the crimes.

That same day, the grand jury indicted Philmore for first-degree murder, conspiracy to commit bank robbery with a deadly weapon, carjacking with a deadly weapon, kidnapping, robbery with a deadly weapon, and third degree grand theft (i.e., the bank robbery).  This December 16, 1997 indictment marked the first time that Philmore was formally charged with any crime stemming from the events of November 14, 1997.  Further, although Philmore was arrested under a capias pursuant to the indictment on December 17, he was not immediately arraigned or even brought before a judge on these charges.  Thus, to the extent Hetherington remained Philmore's attorney after the investigation and indictment, he continued to do so as a volunteer; he was never appointed.[8]  Instead, the case against Philmore essentially remained dormant for a year, until the trial court, in December 1998, granted Hetherington's motion to determine status of attorney, removed Hetherington from the case, and appointed Thomas Garland and Sherwood Bauer as special public defenders to serve as Philmore's trial counsel.

---

[8]  In fact, Hetherington could not have been appointed Philmore's post-indictment counsel pursuant to the Sixth Amendment because, at the time of his indictment and arrest, Philmore refused to complete an application for the appointment of a public defender, which would have included the showing of indigency prerequisite to such an appointment.

II.

In August 1999, Philmore's trial counsel filed a motion to suppress

Philmore's pre-indictment statements to the police and any evidence obtained as a

result of the statements (including Perron's body). The articulated basis of the

motion was that Hetherington provided ineffective assistance of counsel in

violation of the Sixth Amendment and Strickland v. Washington, 466 U.S. 668,

104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Additionally, Philmore's counsel argued

that the de facto denial of counsel during the investigation rendered Philmore's

incriminating statements not freely and voluntarily given under the Fifth and Sixth

Amendments.

In October 1999, the trial court held a two-day evidentiary hearing on

Philmore's motion to suppress. Although Philmore's trial counsel framed their

suppression-due-to-ineffective-assistance argument in terms of Strickland and the

Sixth Amendment, the trial court, ruling from the bench, correctly saw the

argument for the Fifth Amendment claim[9] it actually was:

> The Court views the motion as going to whether or not the statements
> were given freely and voluntarily and whether the Defendant was

---

[9] I have no doubt that the Fifth and Fourteenth Amendment right to counsel during police interrogation, just like the Sixth Amendment right to counsel during adversary criminal proceedings, implies a right to the effective assistance of counsel. See Powell v. Alabama, 287 U.S. 45, 65, 53 S. Ct. 55, 71, 77 L. Ed. 158 (1932) ("the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment").

afforded the right to counsel as guaranteed him by the constitution at the time the statements were made. Accordingly, the Court is going to address the merits of the motion on that basis. . . . The issues before the Court are whether the Defendant, upon his invocation of his Fifth Amendment right, was given counsel within the meaning, spirit and intent of the U.S. Florida Constitution [sic], whether his statements were freely and voluntarily made.[10]

So construed, the trial court found the following facts: (1) "that Mr. Hetherington's acts fell well within the range of professionally competent assistance"; and (2) "that with competent assistance of counsel, the Defendant gave free and voluntary statements on November 18th, 1997, November 21st, 1997 and November 26th, 1997." Under this Fifth Amendment analysis, the trial court denied the motion to suppress as it related to Philmore's statements made, in Hetherington's presence, on November 18, 21, and 26.[11]

---

[10] Indeed, the trial court appears to have summarily rejected the notion that Philmore could assert a claim for ineffective assistance under the Sixth Amendment and Strickland for events transpiring prior to the initiation of adversarial criminal proceedings but, instead, eschewed a literal reading of the motion and consciously construed it as asserting the Fifth Amendment claim that was available: "Well, I don't think it would be appropriate or fair to either the State or the defense for this Court not to rule on the Defendant's Motion to Suppress the Statements simply because the defense counsel chose to site [sic] Strickland in its Motion to Suppress."

[11] The trial court granted the motion to suppress with respect to Philmore's statements made to law enforcement outside of Hetherington's presence, i.e. the statements during the two polygraph examinations. The court explained, "With regards to the statements made during the polygraph examination, the Court agrees with Mr. Bauer's recitation of the facts that any free and voluntary waiver of the presence of Mr. Hetherington was specifically conditioned on being questioned and answers given consistent with those that were given during the statements. Moreover, the detective as well as Mr. Hetherington testified – that protocol wouldn't allow Mr. Hetherington in the room. And while the Court's aware of the written waiver of the Defendant, it's the Court's view that that does not equate to a free and voluntary waiver of counsel during the time of the polygraph examination."

Following Philmore's conviction, on direct appeal, Philmore's counsel challenged the trial court's denial of the motion to suppress, again, on the ground that Philmore's statements were not freely and voluntarily given due to the ineffective assistance of Hetherington's counsel. The Supreme Court of Florida, however, rather than recognizing, as the trial court did, that Philmore's claim, although stated in terms of Strickland, was actually a claim under the Fifth Amendment, not the Sixth, effectively bifurcated its review of the trial court's suppression ruling. It first affirmed the trial court's conclusion that "Philmore freely and knowingly waived his Fifth Amendment right to remain silent" in speaking to the police. Philmore v. State, 820 So. 2d 919, 928 (Fla. 2002) (per curiam), cert. denied, 537 U.S. 895, 123 S. Ct. 179, 154 L. Ed. 2d 162 (2002) (Philmore I). It deferred a ruling, however, on what it saw as "Philmore's ineffective assistance claim under the Sixth Amendment," denying it without prejudice to Philmore's right to re-assert the claim on collateral review under Florida Rule of Criminal Procedure 3.850. Id. at 928-29. This, of course, was erroneous: Philmore's claim based on Hetherington's alleged ineffectiveness was grounded in the Fifth Amendment, not the Sixth; the ineffectiveness argument was the focus of the motion to suppress and all of the evidence presented thereon; and the trial court, on a complete record, properly had already ruled on the

42

ineffectiveness argument as a Fifth Amendment claim. There was no reason for the Supreme Court of Florida to fail to consider the trial court's ineffectiveness findings pertinent to the Fifth Amendment claim on direct review.

Nevertheless, given the supreme court's ruling on direct review, Philmore's state collateral review petition included a claim that Hetherington's conduct constituted ineffective assistance of counsel, ostensibly under the Sixth Amendment and Strickland.[12] At this point, the supreme court's bifurcated ruling put the post-conviction trial court – in this case, the same court and judge that conducted Philmore's trial – in a difficult position: the collateral petition on this issue, invited by the supreme court, effectively demanded that the trial court (now the post-conviction court) "reconsider" its own pretrial suppression ruling. This reconsideration would also require a second (and redundant) evidentiary hearing on the issue of Hetherington's alleged ineffectiveness, this time lasting three days.

The post-conviction court also had to make the difficult determination of what exactly the supreme court had ruled on direct appeal and correctly discern that the supreme court had bifurcated its review of the pretrial suppression ruling.

---

[12] Although the Supreme Court of Florida invited Philmore to re-raise his ineffective assistance argument in a post-conviction motion under Fla. R. Crim. P. 3.850 (Motion to Vacate, Set Aside, or Correct Sentence), Philmore I, 820 So. 2d at 928-29, because this is a capital case, Philmore actually brought his petition for state collateral review under Fla. R. Crim. P. 3.851 (Collateral Relief After Death Sentence Has Been Imposed And Affirmed on Direct Appeal).

43

This ambiguity, forced on the post-conviction court by the Supreme Court of Florida, unnecessarily raised the odds of error in the collateral proceedings. If the post-conviction court wrongly interpreted the supreme court as simply affirming the suppression ruling, in toto, then it would be bound by the law of the case doctrine to conclude that it was not error to deny the pretrial motion to suppress and would have no room to "reverse" itself on collateral review by finding error in the denial of suppression. This would make the entire collateral proceeding utterly pointless with respect to the suppression motion. It would also be a misconstruction of what the supreme court held on direct review. If, on the other hand, the post-conviction court properly recognized that the supreme court bifurcated its review – affirming on the voluntariness of the statements, but deferring review on the ineffectiveness claim – then the post-conviction court would be free to "reverse" itself on the question of Hetherington's ineffectiveness, an issue on which the supreme court had not yet opined. Still, the necessary rehash of the suppression motion and evidentiary hearing would require a needless waste of judicial resources, which the supreme court could – and should – have avoided by ruling on the entire suppression issue (including the ineffectiveness claim) on direct review. A more comprehensive ruling on direct review would have left no claim regarding the suppression motion for state collateral review, saving the

44

parties and the Florida courts time, effort, and resources by reserving any further

challenge for federal habeas corpus review.

Perhaps unsurprisingly, the state post-conviction court denied relief, finding

once again on the suppression issue that Hetherington's performance was not

ineffective under the Strickland standard.[13]  The Supreme Court of Florida,

concluding "that the trial court's determination that Hetherington's actions were

informed, strategic choices is supported by competent, substantial evidence,"

affirmed the post-conviction trial court's finding that Hetherington's performance

was not ineffective.  Philmore v. State, 937 So. 2d 578, 584-85 (Fla. 2006) (per

curiam) (Philmore II).  In its published opinion, the supreme court lumped its

analysis of Hetherington's pre-indictment effectiveness in with its review of other

claims of ineffective assistance that clearly implicated the Sixth Amendment's

Assistance of Counsel Clause, all under an introductory section setting forth the

---

[13]  In the portion of its order denying post-conviction relief relating to the suppression argument, the state post-conviction trial court did not expressly specify whether it was conducting its ineffective assistance analysis under the Fifth or Sixth Amendment.  Given its prior pretrial suppression ruling under the Fifth Amendment, we could assume that the court correctly continued to view this issue as a Fifth Amendment claim.  On the other hand, given that the Supreme Court of Florida erroneously posed this ineffectiveness question as one arising under the Sixth Amendment, we could alternatively assume that the court now felt constrained to follow the supreme court's mischarted course off the path of legal rectitude and treat the issue as a Sixth Amendment claim.  As the supreme court, in its collateral review, continued to treat the question of Hetherington's effectiveness as a Sixth Amendment claim, the question of which amendment the trial court proceeded under on collateral review is little more than academic.  All that really matters is that the court reaffirmed its previous holding that – whether under the Fifth or Sixth Amendment – Hetherington did not provide ineffective assistance.

45

Strickland standard for ineffective assistance under the Sixth Amendment. See id.

at 583-88. Additionally, the supreme court expressly declined "to address the

State's argument that Philmore's Sixth Amendment right to counsel for the murder

had not attached at this time [of Hetherington's challenged conduct]" on account of

its conclusion that Philmore failed to establish that he received ineffective

assistance. Id. at 584 n.6. All of this indicates that the supreme court continued to

view, erroneously, Philmore's claim that Hetherington's pre-indictment

performance was ineffective and should have led to the suppression of Philmore's

incriminating statements as arising under the Sixth Amendment.

With the Supreme Court of Florida now twice having unmoored Philmore's

suppression claim from its proper Fifth Amendment anchor, the issue reached the

federal district court primarily with the trappings of a Sixth Amendment ineffective

assistance claim. In his petition for a writ of habeas corpus under 28 U.S.C. §

2254, Philmore styled his ground for relief based on the failure to suppress his pre-

indictment statements as follows:

> The lower court erred in holding that Mr. Philmore was not deprived
> of his 4th, 5th, 6th, 8th, and 14th Amendment rights of the
> Constitution of the United States and the corresponding provisions of
> the Florida Constitution. The pre-trial representation of Mr. Philmore
> fell far below the standards set in Strickland and Cronic.[14]

---

[14] United States v. Cronic, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). In
Cronic, the U.S. Supreme Court held that the defendant had failed to show actual ineffective

46

Although his petition nominally invoked several constitutional amendments, including the Fifth Amendment, Philmore's argument diverted from the original trial court suppression claim that his statements were not freely and voluntarily given due to defects in Hetherington's assistance to the Sixth Amendment-focused charge that Hetherington's performance amounted to a complete denial of counsel.[15] Positioned in this way, the district court, in denying habeas relief on this ground, concluded that "the [state] courts' decisions as to Philmore's claim of ineffective assistance of pre-indictment counsel were not contrary to nor an unreasonable application of established federal law" under Strickland. This

---

assistance of counsel and that it would not presume ineffective assistance because the case did not involve "surrounding circumstances mak[ing] it unlikely that the defendant could have received the effective assistance of counsel." Id. at 666, 104 S. Ct. at 2051. The Court also noted, however, that circumstances such as "the complete denial of counsel," "counsel entirely fail[ing] to subject the prosecution's case to meaningful adversarial testing," or an extreme case in which "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial" could give rise to a presumption of a denial of the defendant's Sixth Amendment rights. Id. at 659-60, 104 S. Ct. at 2047.

[15] Incidentally, in his federal habeas petition itself, Philmore appears to have conceded a failure to exhaust this claim in the state courts. Philmore responded "No" in response to the question, "Did you raise Ground II [the challenge to Hetherington's performance] in the Supreme Court of Florida on a direct appeal of your conviction?" See 22 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."); Thompson v. Sec'y for Dep't of Corr., 517 F.3d 1279, 1283 (11th Cir. 2008) (per curiam) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999)).

47

finding sounded in the Sixth Amendment relied upon by the Supreme Court of Florida. The district court then continued the supreme court's error by granting Philmore's application for a certificate of appealability, which framed the challenge to Hetherington's pre-indictment performance as follows: "The lower court erred in finding that Philmore was not denied his constitutional rights, as his pretrial counsel's performance fell far below the standards of Strickland and Cronic." In other words, the challenge was presented to us, with the approval of the district court, as a Sixth Amendment ineffective assistance of counsel claim, rather than the Fifth Amendment claim, contesting the free and voluntary nature of the self-incriminating statements, that it was and should have been, as the trial court initially recognized.

## III.

In the foregoing, I have described how Philmore's claim that his pre-indictment counsel's ineffectiveness induced him to make self-incriminating statements that were not free and voluntary, in violation of the Fifth Amendment's Self-Incrimination Clause, improperly morphed into a non-cognizable Sixth Amendment ineffective assistance claim. Because, as we hold, Philmore could have had no Sixth Amendment claim relating to events prior to the initiation of adversary judicial criminal proceedings, one might infer that counsel's

48

effectiveness is wholly insulated from constitutional challenge prior to the attachment of the defendant's Sixth Amendment rights. This is not the case. What follows is a description of (1) Philmore's error in bringing his ineffectiveness claim on federal habeas review, and (2) the manner in which he properly could have, but did not, challenge Hetherington's performance in federal court.

Initially, as this court correctly holds, Philmore could not have established that Hetherington's performance violated his Sixth Amendment right to counsel (and, specifically, the effective assistance of counsel) because his Sixth Amendment right to counsel had not yet attached at the time of Hetherington's challenged conduct. Instead, the only way that a federal habeas court could have reviewed Hetherington's effectiveness is in the context of the trial court's denial of Philmore's motion to suppress the incriminating statements he gave during the police investigation. Under these facts, the federal courts could undertake this review by means of one of two vehicles: (1) a claim that Philmore's appellate counsel was ineffective in failing to raise (or ineffectively raising) a challenge on direct appeal to the trial court's denial of the motion to suppress; or (2) a claim that the Supreme Court of Florida erred by misapplying the law or unreasonably determining the facts in affirming the trial court's denial of the motion to suppress based on Hetherington's alleged ineffectiveness under the Fifth Amendment.

49

The first route – a claim that appellate counsel was ineffective on direct appeal – would be available to Philmore if appellate counsel, on direct appeal, did not challenge (or incompetently challenged) the denial of the motion to suppress. If no such challenge were brought on direct appeal, then appellate counsel would have procedurally defaulted or waived Philmore's Fifth Amendment claim that Hetherington was ineffective (and, accordingly, that Philmore's statements should have been suppressed). In that situation, this procedural default or waiver by appellate counsel would be the specific ineffective assistance under review by the federal habeas court.[16] In order to establish ineffectiveness, Philmore would need to show (1) that his appellate counsel's conduct was deficient (i.e., fell below the minimum objective standard of reasonable competence and professionalism); and (2) that such deficient performance resulted in material prejudice such that there is a reasonable probability – sufficient to undermine confidence in the outcome – that, but for counsel's unprofessional errors, the result of the proceeding would have been different (i.e., that if not for his appellate counsel's ineffectiveness, the Supreme Court of Florida, on direct appeal, would have reversed the trial court's

---

[16] In <u>Douglas v. California</u>, 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (1963), the Supreme Court held that the Fourteenth Amendment's Equal Protection Clause guarantees an indigent defendant the right to counsel on a direct appeal made available as of right. As with the Fifth Amendment right to counsel guaranteed by <u>Miranda</u>, I assume this implies the right to effective appellate counsel.

denial of his motion to suppress).  See Strickland v. Washington, 466 U.S. 668,

687-94, 104 S. Ct. 2052, 2064-68, 80 L. Ed. 2d 674 (1984).

The second route – a claim that the Supreme Court of Florida misapplied the

law or unreasonably determined the facts in reviewing the denial of the motion to

suppress – would be available if Philmore's counsel properly challenged the trial

court's suppression ruling on direct appeal yet, nevertheless, lost the challenge.

The federal habeas statute provides for a federal remedy upon a showing that the

state court's adjudication of a claim

> (1)    resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d).  Accordingly, Philmore could properly seek federal habeas

relief via a claim that the Supreme Court of Florida's decision regarding the

suppression motion (1) was contrary to, or involved an unreasonable application

of, clearly established federal law as determined by the U.S. Supreme Court, or (2)

was based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceeding.

Unfortunately for Philmore, he raised neither claim in his federal habeas

petition, and neither issue appears in the certificate of appealability to this court.

51

Philmore's § 2254 petition does not claim that his counsel on direct appeal provided constitutionally ineffective assistance. Indeed, any such claim would almost certainly fail, as Philmore's appellate counsel <u>did</u> challenge the trial court's denial of the suppression motion on direct appeal. Moreover, Philmore's appellate counsel properly based the challenge on the ground that Philmore's statements were not freely and voluntarily given, pursuant to the Fifth Amendment, due to the ineffective assistance of Hetherington's counsel. As such, counsel on direct appeal brought the right claim in the right way, i.e., was not ineffective; the argument simply did not carry the day in the Supreme Court of Florida.[17] Similarly, neither Philmore's petition nor the certificate of appealability includes any claim that the Supreme Court of Florida misapplied the law or unreasonably determined the facts in affirming the denial of the motion to suppress.

---

[17] The effectiveness of Philmore's trial counsel is also not at issue, primarily because no claim of ineffective assistance of trial counsel, with respect to the motion to suppress, appears in the federal habeas petition or the certificate of appealability. In any event, however, such a claim would also appear to be meritless. It would require a showing (1) that trial counsel was deficient in bringing and litigating the motion to suppress, and (2) that, if not for trial counsel's ineffectiveness, the trial court would have suppressed Philmore's incriminating statements and the resulting evidence. In fact, Philmore's trial counsel <u>did</u> move to suppress the statements, including on the ground that Hetherington's alleged ineffectiveness rendered the statements not freely and voluntarily given under the Fifth Amendment. Therefore, just like appellate counsel, trial counsel appears to have taken the right steps and made the right argument, just unsuccessfully.

In sum, Philmore failed to avail himself of either of the properly cognizable

arguments available to him on federal habeas review for challenging the

underlying claimed ineffectiveness of Hetherington's pre-indictment counsel.